TRAVELERS' INDEMNITY CO. *v.* HOLIMAN.

(Division B. Nov. 11, 1935.)

[164 So. 36. No. 31892.]

W. T. Knox, of Winona, and Emmett W. Braden, and Armstrong, McCadden, Allen, Braden & Goodman, of Memphis, Tenn., for appellant.

V. D. Rowe and J. W. Conger, both of Winona, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant issued to R. C. Watson an automobile liability policy on December 12, 1931, for a period of one year, which policy, among other things, provided as follows: "In consideration of the payment of the premiums and of the statements contained in the declaration and subject to the limits of liability, exclusions and other terms of this policy, . . . to pay on behalf of the assured all sums which the assured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury, including death at any time resulting therefrom, accidentally sustained by any person or persons, and caused by the ownership, maintenance or use of the automobile." And it further provided that the "Company further agrees (a) To serve the Assured upon notice of such injury or destruction by such investigation, or by such negotiation or settlement of any resulting claims, as may be deemed expedient by the Company; (b) To defend in his name and behalf any suit against the assured seeking damages on account of such injury or destruction, even if such

suit is groundless, false or fraudulent." The policy also contained the following: "This agreement is subject to the following conditions: B. Assistance and Cooperation of the Assured. The Assured shall cooperate with the Company, and upon the Company's request, shall assist in effecting settlement, securing evidence, and obtaining the attendance of witnesses. The Assured shall not voluntarily make any payment, assume any obligation or incur any expense other than for immediate surgical relief, except at his own cost. . . . H. Notice of accident. In the event of accident written notice shall be (Coverage A and B) given by or on behalf of the Assured to the Company or any of its authorized agents as soon as is reasonable thereafter. Such notice should contain information respecting the time, place and circumstances of the accident, with the name and address of the injured and any available witnesses. If such information is not reasonably obtainable, particulars to identify the Assured shall constitute notice. The Assured shall keep the Company advised respecting further developments in the nature of claims or suits when and as they come to his knowledge." The limit of the policy for injuries to any one person was five thousand dollars.

The appellee, Holiman, a resident of Winona, Montgomery county, Mississippi, was injured in an automobile accident occurring between Winona and Vaiden on September 29, 1931. The automobile in which he was riding was owned by R. C. Watson, and was being driven by Otis Brister. Watson, the assured, was notified immediately after the accident, and was present in the physician's office when Holiman was receiving first aid medical attention. Some time thereafter, Watson became involved financially, and employed an attorney to make settlement with his creditors. The appellee, Holiman, employed said attorney to represent him in a suit against Watson for damages. This attorney discovered that Watson's car had been injured in the accident, and requested him to bring the policy of insurance to his of-

fice. In about three weeks thereafter, the policy was turned over to this attorney, who, on December 20, 1932, wrote a letter to the appellant stating that he represented the appellee, Holiman, in his claim against Watson, and demanding four thousand dollars in settlement. The first notice received by the appellant of this accident from Watson was a letter dated December 19, 1932, which was received at the appellant's home office on December 23, 1932. Immediately on receipt of this letter by the adjuster for this district, a registered letter was sent to Watson, in which attention was called to the delayed notice, and in which the appellant accepted the notice for the purpose of investigation, under full reservation of its rights in accordance with the terms of the policy.

On April 4, 1933, Holiman filed his declaration against R. C. Watson for personal injuries, and on the same day, Watson notified the appellant that the suit had been filed. On April 6, 1933, the appellant wrote to Watson referring to certain violations of his policy, and stating that it would proceed with the defense of the claim under full reservation of rights to rely upon any defenses under its policy, and advising Watson that he was at liberty to obtain his own counsel. The insured, Watson, replied to the appellant's letter of April 6th, stating that he was not familiar with the notice clause in the policy.

The suit against Watson proceeded to trial, and judgment was rendered against Watson in favor of Holiman for one thousand dollars, from which an appeal was prosecuted to this court, where the judgment was affirmed. See Watson v. Holeman, 169 Miss. 585, 153 So. 669. After the affirmance of this judgment, execution was issued against R. C. Watson which was returned "nulla bona."

On September 7, 1934, the present suit was instituted by declaration in which the former suit and judgment were referred to, and containing allegations that the appellant was, by reason of the insurance contract which was made an exhibit to the declaration, liable to the ap-

pellee, plaintiff in the court below, for the amount of the judgment. This declaration did not state that Watson had complied with all the terms of the policy, either generally or specially, and a demurrer was filed thereto because of the failure to make such allegations, which demurrer was overruled, and appellant filed a plea of the general issue, with notice thereunder that it would show the failure of Watson to give the notice and to comply with the provisions of the policy.

On the trial of the cause, the appellant sought to show that there was an agreement between Holiman and Watson that any amount Holiman should recover on the judgment would be split between them. This was objected to, and the objection was sustained. The appellant also offered two witnesses to testify to the same effect, and this was also objected to and the objection sustained, but the evidence was taken for the purpose of perfecting the record. The first of these witnesses testified as follows:

"Q. Did you hear Mr. Watson and Mr. Holiman have a conversation prior to the bringing of this law suit in which Mr. Watson stated to Mr. Holiman that he expected to get something out of any recovery that Mr. Holiman might get against him? (Objection. Sustained. Exceptions.)

"By Mr. Knox. In order that this may get in the record, what would have been testified to, we ask that the jury be retired so we can get it in the record.

"By the Court. All right, retire gentlemen. (The jury here retired.)

"Q. Did you understand the question? You can answer it since the gentlemen have retired. Did you ever hear Mr. Watson ask Mr. Holiman about what he would get out of this suit if he got a recovery? A. Mr. Watson asked him one day what was he going to get out of it.

"Q. Mr. Watson asked Mr. Holiman that? A. Yes sir. He was laughing and just asked him what was he going to give him or something to that effect. . . .

"Q. Approximately how long after the accident was it that you overheard the conversation? A. It was a good little bit.

"Q. Was it as much as a month? A. Yes sir."

The other witness testified that he had refused to give any statement up to this time, stating that he would tell all about it when he was put upon the witness stand. He was asked and answered as follows:

"Q. What did Mr. Watson say about it? A. He told me one time that there was an agreement that he was to get something out of it, and later on he told me there was nothing to it, that he was just joking about it.

"Q. But at first he told you there was an agreement? A. Yes sir."

In this suit, Watson, the insured in the policy, testified as follows:

"Q. You talked to Allen Holiman about this suit and wanted to know how much you were going to get out of it, telling him that you could make it a whole lot lighter for him if he would give you something, didn't you? (Objection. Sustained. Exceptions.)

"Counsel. If the court please, we want to put this testimony in the record in the absence of the jury.

"Court. All right, gentlemen, go in that room over there. (The jury here retired and the following testimony taken in their absence):

"Q. Answer the question. A. Will you ask the question again, please.

"Q. (Last question above read to witness.) A. It is true that I talked to Allen, and asked him how much I would get out of it, but I didn't mention that I could make it a lot lighter on him.

"Q. What was it that was said? A. Shall I go into detail?

"Q. As near as you can tell us what was said. A. The only time I remember that could have been considered serious, and really it was more or less in a jesting way, I picked Allen up in my car one afternoon down here,

and his car was parked around the Times Office about a block up the street, and on the way up there we discussed it, and I says, 'Allen, what am I going to get out of this thing,' and he said, 'Well, I don't know, don't make any special effort to keep me from winning the case and I won't forget it,' or something to that effect, and I says, 'That is very indefinite, I would like to know what I would get out of it, about five hundred dollars if you win the suit,' and he says, 'You are as crazy as hell, Clif,' and got out of the car.''

On the trial a representative of the company testified that since the trial of the first case he had found out something of material value that probably would have settled this suit.

It will be seen that there were no allegations made that the assured had complied with the conditions of his policy when knowledge of the accident came to him, or that he aided or assisted the company in securing evidence and finding out facts and locating witnesses, as provided in the policy, and that also it was not alleged that he promptly notified the insurer when the accident happened.

Under the doctrine announced in the case of Downing v. Home Indemnity Co., 169 Miss. 13, 152 So. 841, it was held that the injured person stands in the place of the insured, and has no greater rights than the insured. See, also, Adams v. Maryland Cas. Co., 162 Miss. 237, 139 So. 453.

The demurrer should have been sustained, but, had it been sustained, the plaintiff could have amended his declaration, and, perhaps, might have done so. After the demurrer was overruled, the appellant set up affirmative matter, a breach of its conditions by the plaintiff, appellee, and offered to show by several witnesses that there was some understanding between Watson and Holiman, or facts from which such understanding could be inferred by the jury.

It is argued that the appellant waived its right to such notice by entering and defending the suit against Watson,

but it will be noted that the appellant reserved its rights under the policy accruing to it from the failure of the insured to give prompt notice and assist in ascertaining the facts. Of course, if it learned all the essential facts prior to the trial of the former suit against Watson, it might be that a waiver would apply; but there is nothing in the record that would show that all the facts were learned by the appellant prior to that suit. On the contrary, the testimony shows that material facts bearing on said matters were learned for the first time since the trial of that suit.

The appellee, Holiman, stands in the shoes of Watson, and has no greater rights than he has. Clearly, the evidence offered by witnesses as to conversations between them would tend to prove, and from them the jury might infer, that there was an agreement, and if so, of course, there could be no recovery.

We think the court below erred in refusing to permit the appellant to prove the facts which were offered and rejected by the court. We are satisfied that the case should be reversed, and that the errors were prejudicial.

We do not know what force would be given to the testimony of these witnesses by the jury, but certainly the court should have permitted it to go to the jury. From this record, we are not willing to hold that the court should have given the peremptory instruction for the appellant.

In order to develop more fully all the pertinent facts so as to show clearly the result that ought to be reached, this case is reversed and remanded.