# MRS. TOM YUEN SHEE *v.* LONDON GUARANTEE & ACCIDENT COMPANY, LIMITED, AND GENERAL ACCIDENT, FIRE & LIFE INSURANCE CORPORATION, LIMITED.

## NO. 2882.

SUBMITTED JANUARY 8, 1953.                    DECIDED JUNE 2, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

214

OPINION OF THE COURT BY TOWSE, C. J.

This cause is before us upon writ of error from a judgment in favor of both defendants in error. Eleven errors are assigned which require consideration of two prior suits arising out of the same transaction.

The instant proceeding is the third suit prosecuted by the plaintiff in error to recover for injuries sustained in an automobile collision, and names the London Guarantee & Accident Company and General Accident, Fire & Life Insurance Corporation, Limited, as defendants seeking to enforce the general-liability provisions of their policies as insurers of Clarence I. Allgaier and the New Home Grocery, respectively.

The first suit was entitled: "Mrs. Tom Yuen Shee, plaintiff vs. Mrs. Chun Wong Shee and Clarence Irwin Allgaier, defendants." Plaintiff in error's son-in-law Allgaier as operator of the vehicle in which she was a passenger, and Mrs. Chun Wong Shee, the alleged owner of the other vehicle involved, were named defendants. The proceeding terminated in a mistrial and was later discontinued without prejudice by plaintiff in error, when it developed that the New Home Grocery and not Mrs. Chun Wong Shee was the owner of the other vehicle.

The second suit was entitled: "Mrs. Tom Yuen Shee, plaintiff vs. Noble H. Lono and Clarence Irwin Allgaier,

defendants." It named Allgaier, as in the first suit, and Lono, the operator of the vehicle owned by the New Home Grocery, as defendants. Plaintiff in error alleged that the New Home Grocery's vehicle was being operated by Lono at the time of the accident with the permission of the owner, Mrs. Chun Wong Shee. Lono, though served, failed to answer or appear and default judgment was entered against him. Following trial of the second suit, judgment was rendered in favor of plaintiff in error and against the remaining defendant, Allgaier.

The third and instant suit names the defendants in error as party litigants for the first time. It was filed when both refused to discharge the judgment awarded against Lono and Allgaier in the second suit; and it is upon this denial of liability that plaintiff in error instituted the instant suit to enforce that judgment. Each insurer has raised a separate defense peculiar to its own insured. The facts upon which those defenses are predicated will be treated separately.

London Guarantee does not deny that Allgaier is its named insured, or that its liability policy was in effect at the time of the accident. Its sole contention is that the policy was vitiated by acts of non-co-operation on the part of its insured. Vitiation is premised upon clause 8 of the policy:

"Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative

at the time of accident."

Upon this issue the trial judge found that prior to trial of the first suit Allgaier had executed a statement to London Guarantee's claims' agent, the relevant portions reciting:

"As we approached Liliha Street there was a car already ahead of me a short distance. This car was proceeding ewa in the traffic lane nearest the center of School Street. As we reached Liliha Street the green light was in our favor and the car ahead of me proceeded into the intersection and I did also. When this car reached a point over half way across Liliha Street it came to a very sudden stop. As I came abreast of this car I saw another car making a left turn into Liliha Street. This car had been proceeding Waikiki on School Street and made a left turn to go mauka on Liliha Street. I did not have time to stop and struck the right front of this other car as it crossed my traffic lane * * *.

"At the time of the accident I was driving slowly and carefully and the entire fault of this accident rests on the driver of the car which made an unsafe left turn in the face of approaching traffic."

The trial judge further found:

"Lono [the operator of the car turning left] was charged with driving without a license and making an illegal left turn; was convicted of each and fined. Allgaier was not charged with any offense. He testified in the District Court against Lono in the trial in which Lono was convicted. * * *

"During the trial of the first case (Law No. 19197) the plaintiff mother-in-law testified in substance that at the gas station at School and Liliha Streets Allgaier called to her daughter who was in the back seat with her, and said something and it was then that the other car 'hit

our car.' The London Guarantee & Accident Company, Limited's attorney asked Allgaier if this were true and he shook his head in the negative. After the mistrial was entered the attorney made further inquiry of Allgaier about talking to his wife in the back seat just before the accident. He said that that was true. Upon being asked why he had not told the Insurance Company or its attorney about this he made no reply. He was then advised that because of his failure to co-operate with the Insurance Company it would be necessary to get other counsel. He did not bring the complaint and summons served on him in the second suit to his Insurance Company or its attorney. The Insurance Company, however, filed an answer. Allgaier was advised before the trial 'that in the event there was a judgment against the cause the Company would not honor any such judgment under the terms of the policy for the reason that there had been a breach of policy.'

"At the trial, however, Allgaier testified that just prior to the accident he turned his head sidewise to speak to his wife in the back seat and that 'my mind was off my driving' as we approached the intersection where the accident occurred, 'about 6 or 8 feet before the crash occurred.' "

Inasmuch as the mistrial developed during the presentation of plaintiff's evidence at the first trial, Allgaier did not testify in that proceeding.

Other uncontradicted evidence upon the issue of non-co-operation was introduced by plaintiff in error in the instant proceeding. It established that prior to and during the first trial, the attorney for London Guarantee was aware of the fact that Allgaier and the plaintiff in error resided in the same house, and that at or immediately prior to the accident Allgaier had turned his head to converse with his wife in the rear seat of the vehicle, which latter fact he had failed to disclose to London Guarantee prior

to the trial. The same attorney represented Allgaier on behalf of London Guarantee in the first and second trials. He was not counsel of record in the trial of the instant suit. After the first suit, Allgaier notified the attorney that he desired to change his written statement. He did so, adding the fact that at or immediately prior to the accident he had turned his head to converse with his wife, who was in the rear seat. Upon that disclosure, the attorney requested Allgaier's signature to a nonwaiver-of-rights agreement. Allgaier refused. He was thereupon advised to secure other counsel and that his refusal to sign was construed by London Guarantee as an act of non-co-operation under the provisions of clause 8 which breached and vitiated the policy.

Shortly thereafter plaintiff in error instituted the second suit. On being served Allgaier failed to tender the complaint either to the office of the London Guarantee or to its attorney who had represented him in the first suit. To preserve its interests, London Guarantee's attorney entered an appearance on behalf of Allgaier, negotiated with counsel for the plaintiff in error to settle the suit by compromise, defended Allgaier at trial, moved for a new trial, and filed a notice of appeal. He performed the foregoing services on behalf of Allgaier notwithstanding his prior notice to him to secure other counsel and after advising him prior to commencement of the second trial that London Guarantee would not consider itself liable under the policy to discharge any judgment which might be rendered against him in that suit.

It is upon these facts that London Guarantee rests its disclaimer of liability under the policy, and its sole defense to the instant suit of Allgaier's failure to comply with the co-operation provisions of clause 8, *supra,* that: "The insured shall cooperate with the company * * *."

The General Accident, Fire & Life Insurance Corporation, Limited, is the insurer of the vehicle driven by Lono and owned by the New Home Grocery, its named insured. Mrs. Chun Wong Shee and her husband are the joint owners of the New Home Grocery. Mrs. Chun Wong Shee, under a mistaken theory, had been named as the owner of the vehicle in the first suit. She was represented in that suit by counsel for General Accident.

In the second suit Lono was named a defendant for the first time under the allegation that: "* * * said vehicle was being operated and actually used on said occasion by Defendant Noble H. Lono with the permission of the owner of said vehicle, Mrs. Chun Wong Shee * * *." Service in the second suit was made upon Lono and General Accident. The record bears no reference to General Accident's failure to defend the second suit on behalf of Lono. Default judgment was entered against Lono.

In the third and instant suit the plaintiff in error, plaintiff below, opposed introduction of evidence upon the issue of whether Lono was operating the vehicle at the time of the accident with permission of the named insured, the New Home Grocery, and upon the ground that the issue of consent had been determined in the second suit and was *res judicata* by virtue of the default judgment against Lono in that suit.

General Accident's policy upon the vehicle operated by Lono was a standard liability policy in which the New Home Grocery was the named insured, and defining the insured as:

"* * * any person while using the automobile * * * provided the actual use of the automobile is with the permission of the named insured."

Upon the issue of *res judicata* the trial judge found:

"The first action * * * was predicated on the theory

that Lono was delivering groceries for the owner, who was therefore named a party defendant instead of Lono. In that suit Mrs. Chun's son * * * testified that his mother had consented to loan Lono the car 'to pick up a check' * * * a new action * * * was filed naming Lono in place of Mrs. Chun as a defendant.

"Under the evidence in this case we have the son changing his testimony from the story he gave in the first case. This boy is a very poor witness to say the least, and little or no credence can be put in his testimony. Testimony adduced on behalf of the plaintiff was to the effect that after the $2500.00 was recovered and before this suit was filed, Mrs. Chun told the plaintiff that her son and Lono had her (Mrs. Chun's) permission to drive the car. Mrs. Chun * * * testified that she had not allowed Lono to drive the car. Add to this state of the evidence the circumstance that the insurance carrier did not appear on behalf of Lono to defend in the second case * * * which it was bound to do under its insurance contract if Lono was driving with the permission of the owner of the car."

From the foregoing excerpts, it appears that the trial judge disregarded the testimony of Samuel Chun, the plaintiff in error's son, by characterizing his testimony as worthy of little or no credence. Other evidence, borne out by the record, establishes that Mrs. Chun was not in charge of the business of the New Home Grocery on the day in question, and that one of her older sons was in possession of the keys. It further establishes that Lono secured the keys—from what source is not indicated—and in company with Samuel Chun operated the vehicle for his personal use. It is upon these facts that General Accident rests its sole defense that Lono was not an insured at the time of the accident within the terms of its policy.

The liability of General Accident rests upon the deter-

mination of two issues : First, whether entry of the default judgment against Lono in the second suit determined the issue of whether he was operating the vehicle at the time of the accident with the permission of the named insured thereby constituting that issue *res judicata* in the instant suit; second, whether the trial judge erred in finding in the instant suit that Lono was operating the vehicle at the time of the accident without permission of the named insured, it being contended that the finding was not supported by either substantial or credible evidence and was totally in disregard of plaintiff in error's asserted credible evidence upon that issue.

Treating first the contentions of General Accident plaintiff in error contends that the issue of whether Lono was operating the vehicle with the permission of the named insured at the time of the accident is *res judicata,* the issue being foreclosed from consideration in the instant suit by the default judgment rendered against Lono in the second suit.

The elements of estoppel by judgment and application of that principle of law as it pertains to the allegations of a complaint have been stated as :

"A judgment by default only admits for the purpose of the action the legality of the demand or claim in suit; it does not make the allegations of the declaration or complaint evidence in an action upon a different claim." (*In re Van Buren,* 2 Fed. 643; see also 128 A. L. R. 480, for collection of authorities.)

While divergent views exist upon the effect of a default judgment in facts such as here presented, by the great weight of authority a default judgment constitutes a binding adjudication of all of the rights of the parties *embraced in the prayer for relief which arise from the facts stated in the complaint. (Pine* v. *M. E. Conran Co.,* 51

N. Y. S. [2d] 34; *Hannigan* v. *State Italo Petroleum Corp.,* 7 W. W. Harr. 227, 181 Atl. 660; *Swift and Co.* v. *Walden,* 176 Okl. 268; 55 P. [2d] 71; *J. W. Copeland Yards* v. *Sheridan,* 296 Pac. 838.) Neither defendant in error was a party to the second suit. This rule settles the liability of Lono to plaintiff in error as adjudicated in the second suit to which neither defendant in error was a party.

That a differentiation exists in the principles governing *res judicata* and estoppel by judgment requires no discussion or citation of authorities. It is fundamental that the former acts as a bar to subsequent suits upon the same cause of action between the same parties or their privies; the latter as a bar *only to issues adjudicated or which could have been adjudicated between the same parties upon a different cause of action.* (*Lauderdale* v. *Industrial Commission,* 60 Ariz. 443, 139 P. [2d] 449, *Secrest* v. *Pacific Electric Ry. Co.,* 60 Cal. App. [2d] 746, 141 P. [2d] 747.)

Plaintiff in error asserts estoppel by judgment. Applying the foregoing principles to the second suit in which only Lono and Allgaier were defendants of record, we find that the suit did not embody, as issues necessary to its adjudication, a determination of whether Lono was driving the vehicle with the permission of the named insured at the time of the accident. The judgment by default entered against Lono in that suit adjudicated only those issues necessary to establish Lono's liability as pleaded therein. Consequently those issues alone are to be considered *res judicata* in the instant suit. In the second suit the issue of whether Lono was operating the vehicle at the time of the accident with the permission of the named insured bore no materiality or relevancy to Lono's liability *to the plaintiff therein since his liability as resolved by*

*the default judgment adjudicated only his negligence as to the plaintiff therein, Mrs. Tom Yuen Shee.* That issue, not being determined therein, was not *res judicata* as against General Accident at the time it was invoked as a bar in the instant suit.

Plaintiff in error contends the evidence established that Lono was an insured within the terms of the policy and in justification thereof quotes extensively from the testimony of the witness Samuel Chun. It is this testimony which the trial judge apparently disregarded—characterized it as worthy of little or no credence. Except upon a showing of abuse of discretion in so finding, no showing of which has been made, those findings depending upon credibility will not be disturbed. (R. L. H. 1945, § 9564; *Re Land Title Waimalu,* 33 Haw. 832, 833-835 and cases cited; *Territory* v. *Pai-a,* 34 Haw. 722-728; *Clarke v. Ward,* 34 Haw. 875, 877-878; *Feary* v. *Santos,* 38 Haw. 240; *Pong Ah Lim* v. *Ready-Mix Concrete Company,* 39 Haw. 326.)

Two issues are also presented to determine the liability of London Guarantee. First, whether having voluntarily undertaken the defense of the second suit on Allgaier's behalf, with knowledge of the facts now relied upon as constituting a breach of the co-operation clause by Allgaier, has waived and is now estopped from invoking such breach as a disclaimer of liability; second, whether the trial judge in sustaining London Guarantee's contention upon the issue of Allgaier's non-co-operation erred in finding the non-co-operation to be of such degree as to vitiate the policy.

It is fundamental that a policy of insurance of the nature in dispute here is an indemnity contract. Determination of London Guarantee's liability is therefore dependent upon whether Allgaier fulfilled, or in the alternative barred himself from, the contractual obligations of

clause 8 by his conduct. London Guarantee's defense to this contention is premised upon Allgaier's conduct, consisting primarily of his original statement to its representative that he was free from fault in the accident, and later, after testifying against Lono in the criminal proceeding and after conclusion of the first trial, in which London Guarantee's attorney represented him, of altering his original statement and indicating his negligence. Such conduct on Allgaier's part, it is contended, established his non-co-operation under the policy provisions. Plaintiff in error, on the other hand, contends that the facts established by that testimony do not constitute such lack of co-operation as warrant vitiation of the policy inasmuch as the evidence also discloses that London Guarantee waived and is estopped by its own acts from raising such defense.

The issue resolves itself into a determination of the term "co-operation" and its application to the policy. London Guarantee relies upon the general requirements of clause 8 that "The insured shall cooperate with the company."

The clause above quoted and others of similar import have been considered and construed in many jurisdictions, and those decisions, though not entirely in harmony, provide a broad foundation for consideration inasmuch as its interpretation is now presented for the first time. Co-operation clauses of similar import have been variously construed to be a "material condition of the policy" (*Royal Indemnity Co.* v. *Morris*, 37 F. [2d] 90) ; a "condition precedent" if the insured fails to perform in circumstances wherein no estoppel or waiver is invoked as constituting a valid defense to liability. (*Bachhuber* v. *Boosalis*, 200 Wis. 574, 229 N. W. 117.) There is an overwhelming array of decisions recognizing these fundamental con-

cepts in connection with co-operation clauses.

What constitutes co-operation (or lack thereof) is generally held to be a question of fact to be resolved by the jury or a judge sitting without a jury. (*Metropolitan Casualty Ins. Co.* v. *Blue,* 219 Ala. 37, 121 So. 25; *Finkle* v. *Western Auto Ins. Co.,* 26 S. W. [2d] 843; *Coleman* v. *New Amsterdam Casualty Co.,* 126 Misc. 380, 213 N. Y. S. 522.) In circumstances where a violation of the co-operation clause is urged, "* * * there must be a lack of co-operation in some substantial and material respect. Any formal, inconsequential, or collusive lack of co-operation is immaterial." (*George* v. *Employers' Liability Assur. Corp.,* 219 Ala. 307, 309, 122 So. 175, 72 A. L. R. 1438.) To defend upon the ground that a breach of the co-operation clause has occurred, the insurer is required to establish that the insured "failed to co-operate with it in such way as to prejudice it." (*Francis* v. *London Guarantee & Accident Co.,* 100 Vt. 425, 138 Atl. 780.)

"Co-operation does not mean that the assured is to combine with the insurer to present a sham defense. Co-operation does mean that there shall be a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense." (*Coleman* v. *New Amsterdam Casualty Co.,* 247 N. Y. 271, 276, 160 N. E. 367.) "While the meaning of 'co-operation' cannot be expanded to include assistance in a sham defense, it cannot be contracted to exclude a fair statement of the facts of the case. The insurer has a right as a matter of law to know from the assured the facts upon which the insured asserts his claim, in order to determine for itself whether it should contest or attempt to settle the claim." (*Coleman* v. *New Amsterdam Casualty Co.,* 126 Misc. 380, 213 N. Y. S. 522, 524.)

Many jurisdictions have passed upon situations similar

to the instant case wherein the insured executes a signed statement to its assurer which is favorable to the defense of the suit, but at trial departs therefrom and testifies in such manner as to practically confess liability. In such circumstances, the great weight of authority holds that where a written statement, signed and submitted by the insured, which would mislead the assurer by conveying or impliedly creating the supposition that there is in fact a valid defense, and hence precluding any attempt at compromise, militates to the prejudice of the insurer, particularly where the insured later testified and admits liability, and amounts to a breach of the co-operation clause of the policy. (*Solomon* v. *Preferred Acci. Ins. Co.*, 132 Misc. 134, 229 N. Y. S. 257; *Orbach* v. *Preferred Acci. Ins. Co.*, 227 App. Div. 311, 237 N. Y. S. 494; *Bassi* v. *Bassi*, 165 Minn. 100, 205 N. W. 947.) For expression of the minority view see *Guerin* v. *Indemnity Ins. Co.*, 107 Conn. 649, 142 Atl. 268.

In *Conroy* v. *Commercial Casualty Ins. Co.*, 292 Pa. 219, 140 Atl. 905, the insured executed a statement to his assurer relating in effect that the claimant was a guest in his vehicle at the time of the accident. He later insisted that his statement be altered to conform to the actual fact that the claimant was a passenger in his vehicle, not as a guest but for business purposes. It was held that such circumstances did not establish collusion or bad faith in violation of the co-operation clause providing: "* * * The assured shall at all times render to the company all co-operation and assistance in his power."

In the circumstances herein presented we deem the majority view as sound in principle, and accordingly resolve the issue of non-co-operation upon the great weight of authority in affirming the finding of the trial judge, that Allgaier's conduct did in fact constitute a breach of

clause 8 of the policy in such degree as to permit his insurer to vitiate the policy.

Sharply divided principles governing waiver of an alleged breach and estoppel to rely thereon are also to be found in the decided cases.

In a suit against an insurer which is defended upon the ground of non-co-operation, evidence of any character which tends to establish that the assurer was aware of such breach prior to undertaking the defense is competent and admissible. (*Solomon* v. *Preferred Acci. Ins. Co.,* 132 Misc. 134, 229 N. Y. S. 257.)

"* * * The defense of nonco-operation is an affirmative one on which the insurer carries the burden of proof. *United States Fidelity & Guaranty Co.* v. *Remond,* 221 Ala. 349, 129 So. 15; *Francis* v. *London Guarantee & Accident Co.,* 100 Vt. 425, 138 A. 780; *Cowell* v. *Employers' Indemnity Corporation,* 326 Mo. 1103, 34 S. W. (2d) 705." (*Colby* v. *Preferred Acc. Ins. Co.* of *New York,* 134 Me. 18, 22, 181 Atl. 13, 15.)

We concur in the findings of fact of the trial judge under the evidence presented upon the issue of waiver and estoppel. Those findings were: that the attorney for London Guarantee knew of Allgaier's conflicting statements many months prior to commencement of the second suit and of his (Allgaier's) refusal to execute a nonwaiver-of-rights agreement; that the only notice of disclaimer given to Allgaier after London Guarantee elected to continue its defense of the second suit consisted of a verbal statement made to him by its attorney shortly before entering the courtroom for commencement of the second trial; that London Guarantee in fact assumed full control of the defense of the second suit on behalf of Allgaier, which included calling Allgaier as a witness on its own behalf with full knowledge of the potential adverse character of his

testimony.

We are constrained, however, to disagree with the trial judge in his application of the principles of law applied by the trial judge governing the effect of London Guarantee's disclaimer to the facts so found. In doing so the trial judge relied upon the authority of *Moulton* v. *Owler,* 5 Fed. Supp. 700; *Travelers Indem. Co.* v. *Holliman,* 174 Miss. 220, 164 So. 36; *Eakle* v. *Hayes,* 185 Wash. 520, 55 P. (2d) 1072. These three cases stand for the proposition that an insurer is required merely to tender notice of disclaimer to its insured in order to preserve its rights under a policy and thereby conclusively foreclose any issue of waiver or estoppel being invoked against it. We do not perceive this to be the rule applicable to the findings of fact herein.

We believe the preferable view to be that an insurer in a situation such as here presented is required to elect either to rely upon the policy provisions or, in the alternative, to unqualifiedly waive any alleged breach thereof and continue to defend the action unless the assured unqualifiedly consents to a reservation of the assurer's rights under the co-operation clause while continuing in defense of the action.

This principle, which precludes an assurer from applying a dual interpretation to provisions of its own policy, is the settled rule in many jurisdictions. The principle is founded upon estoppel *in pais.* "Estoppels are of two kinds, viz.: those technically such, as by deed, etc., which must be pleaded, to make them absolutely such, and those in pais, which, though not pleaded, may be given in evidence, so as to operate as effectually as those technically such." (*Colby* v. *Preferred Acc. Ins. Co. of New York,* 134 Me. 18, 21, 181 Atl. 13, 15.)

"The estoppel claimed by appellant and recognized by

the above-mentioned cases is that form of estoppel *in pais* called by text-writers and known to jurists as *quasi* estoppel. This class of estoppel is sometimes expressed in the language of the rule or maxim that one cannot blow both hot and cold. It is based upon the broad equitable principle which courts recognize, that a person, with full knowledge of the facts, shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another. To constitute this sort of estoppel the act of the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another; or the person invoking the estoppel must have been induced to change his position, or by reason thereof the rights of other parties must have intervened. [10 Cal. Jur. 645.] * * *." (*McDaniels* v. *General Ins. Co.,* 1 Cal. App. [2d] 454, 459, 36 P. [2d] 829, 833.) The facts which in our opinion sustain the estoppel herein are those recited *supra,* as found by the trial judge relating to that issue.

*Miller* v. *Union Indemnity Co.,* 209 App. Div. 455, 204 N. Y. S. 730, 732, clearly announces what we deem to be the rights and liabilities of the assurer in a situation such as is before us. "The defendant with full knowledge of the falseness of Loree's statement in all its details undertook the conduct of Loree's case in the former action. Shortly previous to the time of the trial of that action, the defendant's lawyers requested Loree to sign an instrument stipulating that the defendant's conduct of his case at that trial should not be taken as a waiver on the part of the defendant of any defense under the policy in any action brought by the plaintiff. Loree declined to sign this and demanded that the defendant conduct his case as it agreed in its policy. A letter was then written to Loree by the attorneys for the defendant stating that the de-

fendant would conduct the defense, but adding, 'It is the claim, however, of the said company [the defendant] that you have violated the terms of the policy mentioned by you and that all obligations on their [the company's] part has ceased thereby.'

"When confronted with this situation, assuming that the alleged defense was valid, the defendant was put to an election. It could stand on its defense and refuse to go on, or it could abandon such defense and conduct the insured's side of the action. *It could not do both.* The choice of the latter course was inconsistent with the maintenance of a claim of no liability [and authorities cited]." (Emphasis added.)

The rule of the *Miller* case, *supra,* is applied with force to factual situations analogous to those in the record before us.

"We are of the opinion that the company could not under the circumstances of this case, after the judgment, rely upon the failure of the insured to deliver it the process or pleading in the case. There was a clear waiver of the right to do so. Independent of the technical doctrine of estoppel, the company could make this waiver by failing to insist upon its right at the proper time. *Va. Fire & Marine Ins. Co.* v. *Richmond Mica Co.,* 102 Va. 429, 46 S. E. 463, 102 Am. St. Rep. 846; *Eichelbaum* v. *Klaff,* 125 Va. 98, 99 S. E. 721; *Lee* v. *Casualty Co.,* 90 Conn. 202, 96 A. 952; *Miller* v. *Union Indemnity Co.,* 209 App. Div. 455, 204 N. Y. S. 730." (*Fentress* v. *Rutledge,* 140 Va. 685, 696, 125 S. E. 668, 671.)

"* * * The plaintiff's counsel contends this was a waiver of the claim of lack of co-operation. There is, I think, no doubt that the law requires an insurer who knows that the assured has failed to co-operate to immediately deny further liability if it expects later to take advantage of

that failure to co-operate. The insurance company cannot after knowledge of the failure to co-operate, undertake the general defense of an action, and in case of an adverse verdict, then have recourse to its own defense of failure to co-operate. Its failure to take advantage of its knowledge will be deemed a waiver. The cases are collected in 72 *A. L. R.* 1446, *note; Allegretto* v. *Oregon Automobile Ins. Co.*. 140 Or. 538, 13 P. (2d) 647; *Miller* v. *Union Indemnity Co.,* 209 App. Div. 455, 204 N. Y. S. 730; 13-14 *Huddy on Automobiles,* § 299.

"In all these cases knowledge of the failure to co-operate was acquired before the trial began." ( *Brooks Transp. Co.* v. *Merchants' Mut. Casualty Co.,* 6 W. W. Harr. 40, 54, 171 Atl. 207, 213.)

"Where the insured refuses to enter into an agreement permitting insurer to defend with reservations, and communicates to the insurer a denial of the latter's right to so defend with reservation, as appellant herein did on at least two occasions (Plaintiff's Exhibits 4 and 7, *supra*), and thereafter the insurer fails to withdraw and continues to represent the insured in defense of the suit, the law is clear that the insurer has waived its right to withdraw, and will be estopped to later assert such right when sued by the insured for failure to properly defend. (*Beatty* v. *Employers' Liability Assur. Corporation, supra; Gerka* v. *Fidelity & Casualty Co.* of N. Y., 167 N. E. 169; *Utterback-Gleason Co.* v. *Standard Accident Ins. Co.,* 184 N. Y. S. 862, affirmed in 135 N. E. 913; 269 *Canal St. Corporation* v. *Zurich General Accident & L. Ins. Co.,* 235 N. Y. S. 63, affirmed in 170 N. E. 159; *Miller* v. *Union Indemnity Co.,* 204 N. Y. S. 730; *Caiola* v. *Aetna Life Ins. Co.,* (N. J.) 181 A. 524; *National Battery Co.* v. *Standard Accident Ins. Co.,* (Mo.) 41 S. W. 2d 599; *Lewis* v. *Fidelity & Casualty Co. of N. Y.,* (Pa.) 156 A. 73.)." (*Boise Motor Car Co.* v.

*St. Paul Mercury Indemnity Co.,* 62 Idaho 438, 449, 112 P. [2d] 1011, 1016.)

It is apparent from the record before us that London Guarantee was in fact continuing to defend successive suits, in favor of its insured, and simulatneously disclaiming liability under the policy without the consent of their insured. That course of conduct is precisely what an insurer should be foreclosed from pursuing. It may elect to do either, but is precluded from doing both. Should the insurer continue defense of the suit without securing a disclaimer of liability consented to by the insured, as occurred herein, it must be considered as having waived the defense of nonliability under the co-operation clause.

Plaintiff in error also contends that the "Financial Responsibility Laws" provision of London Guarantee's policy expressly incorporates section 7406 of the Revised Laws of Hawaii 1945 into its contract, and that by virtue of such merger London Guarantee became unconditionally liable to the plaintiff upon the judgment entered against Allgaier in the second suit. It is urged that the insurer's remedy thereby became one against the insured under the policy provision: "The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph." The agreement referred to provides: "Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibilty law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the

limits of liability stated in this policy."

Section 7406 of the Revised Laws of Hawaii 1945 is a portion of the integrated "Uniform Automobile Liability Security Act." The Act is intended to provide adequate security against designated classes of irresponsible and impecunious automobile operators by requiring that certain enumerated classes operating vehicles shall furnish proof of financial responsibility to the Treasurer of the Territory in the form of either an approved liability insurance policy, an indemnity bond, or by deposit of cash. The Uniform Act was enacted in 1933. The financial responsibility provisions were amended in 1949, expressly exempting its application as amended, to accidents or judgments arising therefrom occurring prior to the effective date of the Act on January 1, 1950. The accident herein having occurred on November 4, 1947, the Act or any provisions thereof applicable to the instant proceedings is governed by the terms of the Act in effect prior to amendment.

The five classes encompassed within the limitations of the Act are: a person whose chauffeurs license has been revoked; a chauffeur who has been convicted of any violation for which the Treasurer has the right in his discretion to revoke or suspend such license; an operator having an accident record during the twelve months next preceding his application for a chauffeurs license of "more than two accidents, due to his own negligence, which caused injury to persons or damage to property, including motor vehicles operated by such person, amounting in the aggregate to more than two hundred dollars."; a person who "if within fifteen days after it becomes final * * * fails to satisfy any judgment in excess of one hundred dollars rendered against him by a court of competent jurisdiction in this or any other territory, state or the District of

Columbia for damages on account of personal injury or damage to property resulting from the operation by him, his agent or any other person with his expressed or implied consent of a motor vehicle owned by him, or the operation by him or his agent of a motor vehicle not owned by him * * *."; and a minor applicant for a chauffeurs license.

The record bears no evidence which would install Allgaier *locus standi* within any of the classes enumerated. Plaintiff in error cites no authority, nor are we able to find any precedent to support the contention that Allgaier *ipso facto* became a person within or qualified as an operator in any one or more of the classes enumerated by virtue of his designation as the named insured and the merger by incorporation of the Financial Responsibility Law provisions of London Guarantee's policy. Nor, does the legislative history of our Uniform Automobile Liability Security Act support that conclusion. "A driver is not subjected to the regulation and supervision provided in the proposed Act unless and until he has affirmatively indicated his lack of responsibility." (Sen. J., 17th Legis., Terr. of Haw., 361 [1933].) This pronouncement clearly constitutes "lack of responsibility" as a condition precedent to the application of the provisions of the Act.

The judgment of dismissal in favor of the defendant in error General Accident, Fire & Life Insurance Corporation, Limited, is affirmed.

The conclusions of the trial judge being premised upon erroneous principles of law, the judgment of dismissal in favor of London Guarantee & Accident Company, Limited, is reversed with instructions to enter a judgment in favor of the plaintiff in error and against the defendant in error London Guarantee & Accident Company, Limited, in the full amount prayed for, together with interest, costs, and a reasonable attorney's fee.

Remanded for further proceedings in conformity with this opinion.

*H. K. H. Lee* for plaintiff in error.

*E. J. Botts* and *F. Patterson* for London Guarantee & Accident Company, Limited, defendant in error.

*M. D. White* for General Accident, Fire & Life Insurance Corporation, Limited, defendant in error.