**Jerry E. DONAHOO and Laurie Donahoo, Plaintiffs,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**No. GC86–18–NB–O.**

United States District Court,
N.D. Mississippi,
Greenville Division.

March 16, 1987.

Michael T. Lewis, Clarksdale, Miss., for plaintiffs.

Philip B. Terney, Greenville, Miss., for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause came before the court on the defendant's motion for summary judgment on the plaintiff's bad faith claim. Upon due consideration of the parties' memoranda and evidentiary material, the court is in a position to rule on the motion.

### I. Introduction

This action arises out of a claim for uninsured motorist coverage under two auto insurance policies. The complaint demands payment of insurance proceeds for breach of contract and punitive and extra-contractual damages for bad faith. Since the filing of this action, the defendant has paid all payable proceeds for property damage and the full amount of the policy limits for bodily injuries. The remaining issue is whether the defendant acted in bad faith.

### II. Facts

This action involves the following undisputed facts. On June 4, 1983, plaintiff Jerry Donahoo [hereinafter referred to as "Donahoo"] while driving his motorcycle was involved in an accident with an uninsured motorist. Donahoo sustained severe injuries and was in a coma for several days. While Donahoo was in a comatose state, his wife, Lori Donahoo, requested her father, Pete Farmer, to telephone their State Farm agent, Dan Bell, and notify Bell of the accident and resulting injuries. Farmer notified Bell on June 5, 1983 and inquired of Bell what coverage Donahoo had with State Farm. Although Donahoo had two auto policies covering two automobiles which provided uninsured motorist coverage for bodily injuries and the uninsured motorist provision in one of the policies also covered property damage, there was no mention of either auto policy during the phone conversation between Bell and Farmer. Bell checked his file on a policy covering Donahoo's motorcycle and learned that the policy had lapsed for nonpayment

of premiums and was not in effect at the time of Donahoo's accident. Bell did not review Donahoo's files at any time thereafter.

The extent of the phone conversation is in dispute. The plaintiffs contend that Farmer explained that Donahoo was hit by an uninsured motorist and inquired whether Donahoo was covered by any insurance. Bell allegedly advised that Donahoo had no coverage whatsoever. State Farm contends that Farmer asked Bell whether Donahoo had coverage on his motorcycle and that Bell advised that Donahoo had no coverage on his motorcycle at the time of the accident.

On December 2, 1985, the plaintiffs' counsel visited the agent's office and requested access to the plaintiffs' file for review and copying. He was refused access at that time but was shown a copy of one of the plaintiffs' auto policies. The plaintiffs filed the complaint on January 27, 1986. The plaintiffs had not submitted the required documentation prior to the filing of suit and at no time submitted a written proof of claim as required under the policies in dispute. Upon receipt of requested documentation of Donahoo's property damage and medical expenses, State Farm paid the claim under the uninsured motorist provisions of the plaintiffs' two auto policies.

### III. Bad Faith Claim

The plaintiffs seek damages for tortious denial of their uninsured motorist claim. However, it is undisputed that the plaintiffs failed to submit a written proof of claim as required under the insurance policies in dispute:

### POLICY CONDITIONS

1. Notice. In the event of an accident or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, and the names and addresses of injured persons and available witnesses, shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable....

2. Action Against Company. No action shall lie against the company:

(a) Unless as a condition precedent thereto there shall have been full compliance with all terms of this policy.

....

6. Medical Reports; Proof of Claim—Coverages C, M, S, T and U [uninsured motor vehicle coverage]. As soon as practicable the person making claim under coverages ... U shall give to the company written proof of claim, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim....

The plaintiffs made no attempt to comply with these provisions until December, 1985, two and one-half years after Donahoo's accident.

The Mississippi Supreme Court repeatedly has held that conditions precedent to recovery under an insurance contract, such as written proof of loss requirements, are enforceable. *Coahoma County Bank & Trust Co. v. Feinberg,* 128 So.2d 562, 566 (Miss.1961) (citing *Travelers' Indem. Co. v. Holiman,* 174 Miss. 220, 164 So. 36 (1935); *Southern States Fire Ins. Co. v. Hand–Jordan Co.,* 112 Miss. 565, 73 So. 578 (1917)). In *Feinberg* the insured was denied benefits for failure to file a written proof of loss as required by the policy. The court upheld the requirement even though the insured gave oral notice of the loss to the insurer at which time the agent did not instruct the insured to submit a written proof of loss. Accordingly, an insurer contesting coverage for noncompliance with a written proof of loss provision does not constitute bad faith. *Lincoln Nat'l Life Ins. v. Crews,* 341 So.2d 1321, 1322 (Miss.1977) (insurer's rejection of claim under written proof of loss provision and unsuccessful defense of suit brought by insured does not justify punitive damages).

The plaintiffs assert that they complied with instructions on the face of the plaintiffs' policy and in a brochure attached to the Declarations page:

> If You Have An Accident Contact Your State Farm Agent. [policy]
>
> When a Claim Occurs ... If There Are Any Injuries, Phone Your State Farm Agent Or Claims Office Immediately. [brochure]

Farmer's phone call to Bell on the plaintiffs' behalf is the only notice given. Courts have held that a mere inquiry or request for information is not the equivalent of a claim. *See, e.g., Avril v. U.S.,* 461 F.2d 1090, 1091 (9th Cir.1972) (claim is "something more than mere notice of an accident and an injury"); *Wang v. United States,* 302 F.2d 262, 263 (2d Cir.1962) ("requests for information, without demand of payment, do not constitute a claim" under veteran life insurance policies); *Werner v. United States,* 86 F.2d 113, 113 (2d Cir. 1936) (claim on a war risk policy "must at least be the assertion of a present demand").

The plaintiffs further assert that the instruction to phone a State Farm agent or claims office creates an ambiguity as to the extent of the insured's duty to give notice. The court finds that the policy conditions are clear and unambiguous and that the instruction does not conflict with those conditions. Therefore, the court finds that the plaintiffs did not properly file a claim under the policies in dispute and have no cause of action against State Farm for wrongful or bad faith denial of a claim.

■ The plaintiffs alternatively assert that State Farm's claims management procedure involves a "deliberative pattern" of frustrating uninsured motorist claims. *See Fedders Corp. v. Boatright,* 493 So.2d 301, 312 (Miss.1986) (breach of warranty action in which the court found "no proof of any deliberative pattern by Fedders to frustrate complaints made for defective merchandise"). The cases cited by the plaintiffs involve wrongful denials of claims on the ground of an exclusionary provision that previously had been declared void as against public policy. *Richards v. All-state,* 693 F.2d 502 (5th Cir.1982); *Employers Mut. Casualty Co. v. Tompkins,* 490 So.2d 897 (Miss.1986). The insurers in both cases instructed their claims personnel to disregard the exclusion instead of deleting the provision from the policies. In *Richards v. Allstate* the Fifth Circuit held that Allstate's procedure was inadequate:

> Allstate urges that its procedure was successful in every case except Richards'. Even accepting this as true, this procedure provided no remedy for those policyholders who read Exclusion 2, assumed their injuries were not covered, and failed to file claims. Failure to delete Exclusion 2 in effect represented a corporate decision by Allstate not to inform its policyholders of undisclosed coverage required by Mississippi law.

693 F.2d at 505. Similarly, the plaintiffs characterize State Farm's claims management procedure as a barrier to the filing and payment of uninsured motorist claims. More specifically, they argue that Farmer's phone inquiry with agent Bell frustrated the filing of their claim.

Allegedly, untrained State Farm agents, such as Bell, are authorized to deny uninsured motorist claims over the phone. It is undisputed that State Farm does not distribute manuals on uninsured motorist claims to its agents. State Farm's claims superintendent testified in his deposition that the procedure for handling uninsured motorist claims is left to the regional claims offices' discretion in order to comply with varying state laws. State Farm's president testified that agents are authorized to respond to phone inquiries as to coverage. However, State Farm instructs its agents to refer all claims to the claims office. Thus, the court finds that State Farm does not authorize agents to deny claims and that agent Bell had no such authority.

In addition, the plaintiffs argue that State Farm's alleged "deliberative pattern" of frustrating claims is manifested in its advertising scheme and denial of access to files. The plaintiffs assert that in response to State Farm's advertisement, "Like a good neighbor, State Farm is there," they

reasonably relied on agent Bell's information in not filing a written proof of claim. On the contrary, the plaintiffs had filed previous claims under their State Farm policies and had dealt directly with the claims office. Therefore, the court finds that the plaintiffs were familiar with State Farm's claims procedure and thus could not reasonably have relied on Farmer's phone inquiry. The plaintiffs further allege that State Farm has a routine procedure of denying insureds access to their files. However, the plaintiffs have established only one incident in which their attorney was not allowed to review and copy their file but was shown a copy of one of their auto policies. The only other evidence before the court is testimony that agents were instructed to obtain the claims department's approval before releasing an insured's file to an attorney. There is no evidence that State Farm had a routine procedure of denying insureds access to their files.

The court finds that the plaintiffs have made no showing of a "deliberative pattern" in State Farm's claims procedure which precludes the filing or payment of legitimate uninsured motorist claims. The only evidence before the court is that agent Bell was uninformed as to uninsured motorist coverage.

The dispute regarding Farmer's phone conversation with agent Bell reflects miscommunication. It is undisputed that there was no discussion of the plaintiffs' two auto policies and the uninsured motorist provisions. Looking at the evidence in a light most favorable to the plaintiffs, the court finds that agent Bell's ignorance of the plaintiffs' uninsured motorist coverage constitutes simple negligence but not gross negligence or willful misconduct rising to the level of an independent tort. The Mississippi Supreme Court has made a distinction between ordinary negligence and bad faith:

> ... a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts, which are the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud and deceit.

*State Farm Fire and Casualty Co. v. Simpson,* 477 So.2d 242, 250 (Miss.1985). The court finds that any incompetence on the part of State Farm's agent in answering insureds' questions pertaining to uninsured motorist accidents does not rise to the level of a "heightened tort" and thus does not constitute the independent tort of bad faith. *See Fedders Corp. v. Boatright,* 493 So.2d 301, 312 (Miss.1986) (showing of "incredible incompetence or understaffing," absent proof of any chicanery, does not justify an award of punitive damages). Therefore, the court finds that the plaintiffs are not entitled to an award of punitive damages.

### IV. Extra–Contractual Damages

■ The plaintiffs seek extra-contractual compensatory damages for mental and emotional distress, prejudgment interest, and attorney's fees, in addition to punitive damages. However, compensatory damages over and above the underlying contract claim in a bad faith action are not recoverable if the facts do not justify an award of punitive damages. *State Farm Fire and Casualty Co. v. Simpson,* 477 So.2d 242, 253 (Miss.1985) (erroneous award of compensatory damages including attorney's fees where facts do not warrant a punitive damage instruction). *See Stanton & Associates v. Bryant Constr. Co.,* 464 So.2d 499, 502 (Miss.1985) (in the absence of a statute or contractual provision, there can be no recovery of attorney's fees or prejudgment interest without proof sufficient to support an award of punitive damages); *Home Ins. Co. v. Olmstead,* 355 So.2d 310, 313–14 (Miss.1978) (prejudgment interest may be allowed where the amount due is liquidated when the claim is originally made). Since there is no showing of bad faith, the court finds that the plaintiffs are not entitled to extra-contractual damages.

■ State Farm did not pay the insurance proceeds to the plaintiffs until after this action was brought. However, State Farm did pay promptly upon receipt of requested documentation of property damage and medical expenses; the plaintiffs had not submitted a written proof of claim or the necessary documentation prior to filing of suit. The instant action is distin-

guishable from many bad faith actions in which the insured files a claim that is wrongfully denied by the insurer. The court envisions such cases in which, in the absence of bad faith, attorney's fees should be awarded to compensate an insured whose claim is not honored until after suit is filed. In recent years, the Mississippi Legislature has enacted statutes authorizing recovery of attorney's fees incurred in litigation arising out of commercial or business transactions. *See, e.g.,* Miss. Code Ann. § 11–31–2(3)(c) (Supp.1986) (attorney's fees recoverable for attachment suit brought in bad faith); § 11–53–81 (attorney's fees recoverable in suit on an open account). The court suggests that the availability of attorney's fees in insurance claims litigation which do not involve bad faith actions but in which claims were denied through the simple negligence or misjudgment of the insurer are desirable and would wholly compensate an insured who is entitled to proceeds when they become due and payable under the policy.

### Conclusion

The court finds that there are no genuine issues of material fact as to the issue of bad faith and therefore State Farm is not liable for punitive damages or extra-contractual damages. Accordingly, the motion for summary judgment is well taken and should be granted.

An order will issue accordingly.