416 F.2d 693
 Howard R. KIENLE and Dora J. Kienle, his wife, Appellants,
v.
Alan Boud FLACK, an underwriter at Lloyds, London, on behalf of himself and all other Underwriters at Lloyds, London, Subscribing Certificate of Insurance No. 18201 issued by Voigt, Walker & Co., Inc., Appellee.
 No. 22465.
 United States Court of Appeals Ninth Circuit.
 August 28, 1969.
 Rehearing Denied October 6, 1969.
 
 Orvin H. Messegee (argued) and Jeremiah M. McCormick, Seattle, Wash., for appellant.
 Thomas S. Zilly (argued), of Lane, Powell, Moss & Miller, Seattle, Wash., for appellee.
 Before ELY and HUFSTEDLER, Circuit Judges, and WEIGEL,* District Judge.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 Appellants, judgment creditors of an escrow agent, brought this action to recover the amount of their judgment against the escrow agent from the escrow agent's insurer, the appellee (Lloyds), which had written a professional errors and omissions policy for the escrow agent. From a judgment in favor of Lloyds, the judgment creditors appeal. Federal jurisdiction is based on diversity of citizenship.
 
 
 2
 Pacific Farwest Mortgage & Escrow Co. ("Pacific Farwest"), was the escrow agent handling the sale of real property owned by appellants, Howard and Dora Kienle, to Northwestern Utilities, Inc. ("Northwestern") in 1964. Under the master real estate contract with the Kienles, Northwestern agreed to deliver into escrow any purchase contracts which Northwestern entered with its subvendees of portions of the tract for application upon the balance of the purchase price for the whole tract. Escrow instructions directed Pacific Farwest to withhold the fulfillment deed until the full purchase price had been paid by Northwestern. In June, 1964, Northwestern tendered three real estate sales contracts into escrow, claimed thereby payment in full, and demanded release of the fulfillment deed. The Kienles refused the demand and instructed Pacific Farwest to withhold the deed until receipt of the Kienles' written consent to the release. Mr. Cooke, President of Pacific Farwest, asked Pacific Farwest's lawyer what to do about the conflicting demands. The lawyer, Leslie Yates, advised Mr. Cooke to file an interpleader action. Mr. Cooke did not follow Mr. Yates' advice. Over the protest of the Kienles, Pacific Farwest delivered the fulfillment deed to Northwestern after obtaining from Northwestern an indemnity agreement and two promissory notes for $1500 each in favor of Pacific Farwest to protect it from loss in the event the Kienles sued. Cooke knew that there was a distinct possibility of a suit by the Kienles if Pacific Farwest delivered the deed.
 
 
 3
 The Kienles did bring suit in November 1964 in Washington against Northwestern, Pacific Farwest, and others, seeking rescission of their sale to Northwestern and damages if they could not get back their property. A default judgment was taken against Northwestern, but Northwestern's assets and its officers had vanished. The trial proceeded against the remaining defendants with the result that the Kienles did not obtain rescission, but did get a judgment for $49,247.50 damages against Pacific Farwest. That judgment is so far unsatisfied.
 
 
 4
 The Kienles next filed a complaint in state court in Washington against Lloyds, alleging that Lloyds, an alien insurer, had issued a $100,000 escrow agent's errors and omissions policy to Pacific Farwest, that the policy covered the judgment they had recovered from Pacific Farwest and that the defense of the earlier action had been tendered to Lloyds and had been declined. Lloyds removed the case to the District Court. Among the defenses urged by Lloyds were lack of coverage, failure of Pacific Farwest to give appropriate notice of the action or to request defense, and breach of the cooperation clause of the policy. The District Court resolved each of those issues in Lloyds' favor. The Kienles appeal from the adverse judgment.
 
 
 5
 It is unnecessary for us to discuss all of the contentions of the parties, because we have concluded that the District Court correctly decided that the failure of Pacific Farwest to comply with the cooperation clause, a condition precedent to Lloyds' liability on the policy, foreclosed recovery by the Kienles and that Lloyds neither waived that condition nor is estopped from asserting it.
 
 
 6
 In the original complaint against Pacific Farwest the Kienles alleged that Northwestern fraudulently induced them to enter into the transaction and that Pacific Farwest had been "acting in collusion" with Northwestern. Shortly after Pacific Farwest was served, Mr. Yates, counsel for Pacific Farwest, forwarded a copy of the original summons and complaint to Lloyds. There was no demand by Pacific Farwest that Lloyds undertake the defense, but it is apparent that the forwarding of the suit papers was intended to notify Lloyds of the action. On January 6, 1965, Gordon Moss, Lloyds' counsel, who had received the suit papers and covering correspondence, wrote to Mr. Yates telling Mr. Yates that he did not think there was coverage because the complaint alleged dishonest conduct, which was expressly excluded, and intentional conduct, which was not included in the policy. On February 15, 1965, Mr. Moss wrote to Mr. Yates advising him that the underwriters at Lloyds had decided to deny coverage on the grounds Mr. Moss stated in his earlier letter.
 
 
 7
 Meanwhile, on February 3, 1965, the Kienles filed an amended complaint, deleting any averments connecting Pacific Farwest with Northwestern's alleged fraud and alleging as to Pacific Farwest only facts about Pacific Farwest's delivery of the fulfillment deed contrary to its duty as an escrow agent. Pacific Farwest did not notify Lloyds of this development at any time, but the Kienles' counsel wrote to Mr. Moss on May 20, 1965, advising him that the collusion charges had been dropped. Mr. Moss thereupon wrote to Mr. Yates on May 24, 1965, requesting all relevant pleadings and escrow documents. He received no answer from Mr. Yates or anyone else. The next communication was on November 3, 1965, when Mr. Yates notified Mr. Moss that the state court had held Pacific Farwest liable to the Kienles. Mr. Moss responded with a request that Pacific Farwest forward copies of the relevant documents. Failing to receive any reply, Mr. Moss renewed his request on December 1, 1965. His request was ignored. On May 18, 1966, Mr. Moss again wrote to Mr. Yates asking about the status of the appeal, and again the response was silence.
 
 
 8
 Clause 5 of the policy, under the heading "Provisions and Conditions," states:
 
 
 9
 "The Assured shall as a condition precedent to their right to be indemnified under this Certificate give to Underwriters immediate notice in writing of any claim made upon them and further, upon request, shall give to Underwriters such information as Underwriters may reasonably require and as may be in the Assured's power."
 
 
 10
 The questions whether Pacific Farwest failed to comply with the cooperation clause of the policy and whether the cooperation clause was a condition precedent to Lloyds' liability on the policy were not litigated in the Kienles' action against Pacific Farwest. The judgment therefore does not conclude these issues, even if Lloyds were otherwise bound by the judgment. (East v. Fields (1953) 42 Wash.2d 924, 259 P.2d 639.)
 
 
 11
 The Kienles recognize the futility of arguing on this record that Pacific Farwest did not breach the cooperation clause of the policy. They also recognize that they necessarily stand in Pacific Farwest's uncomfortable shoes on the policy issues. (Van Dyke v. White (1960) 55 Wash.2d 601, 349 P.2d 430.) They therefore argue that the cooperation clause was not a condition precedent to liability on the policy, and, even if it were, Lloyds is foreclosed from relying on the breach to avoid liability because it had denied coverage before that breach.
 
 
 12
 The first contention dwindles to a grammatical quibble. The argument is this: Clause 3 refers to "a condition precedent" instead of to "conditions precedent." The use of the singular creates an ambiguity because there follow two conditions. One cannot tell which of the two conditions was intended to be the condition precedent. Therefore, the construction most favorable to the insured must be adopted. That construction is that the first named condition, notice, is the condition precedent and the second named condition, cooperation, is not a condition precedent. Washington will not reach as far as the Kienles stretch to uncover an ambiguity. (Hamilton Trucking Service, Inc. v. Automobile Insurance Co. (1951) 39 Wash.2d 688, 237 P.2d 781.)
 
 
 13
 The second contention is made of tougher thread. As Lloyds concedes, the general rule is that an insurer is estopped from relying on breaches of the cooperation clause occurring after the insurer has improperly denied coverage under the policy. The Kienles argue that the rule applies to prevent Lloyds from relying on Pacific Farwest's breach of the cooperation clause. There would be merit in that contention if Lloyds' policy had imposed upon it a duty to defend as well as a duty to indemnify. An insurer who has failed to perform a duty to defend will not be permitted to escape the rigors of the estoppel rule by arguing that a complaint against its insured was outside its policy, unless the complaint could not have been amended to state a claim within the policy coverage. (E.g., Gray v. Zurich Ins. Co. (1966) 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168; Hartford Acc. & Indem. Co., Inc. v. Pacific Indem. Co. (1967) 249 Cal.App.2d 432, 57 Cal.Rptr. 492; cf. Journal Pub. Co. v. General Cas. Co. (9th Cir. 1954) 210 F.2d 202.) Had Lloyds been obligated to defend, its denial of coverage based on the original complaint filed by the Kienles would have been an improper denial because the Kienle complaint was susceptible of amendment to state a claim within the policy, and, in fact, the complaint was thereafter amended. But Lloyds' policy placed upon it no duty to defend. The policy merely gave Lloyds the right to take over the lawsuit if it chose to do so. The Kienles cite no authority and we have found none stating that a denial of coverage based on a pleading which can be amended to state a covered claim is deemed an improper denial by an insurer with a duty to indemnify, but not a duty to defend. We see no reason to create such a rule in this case.
 
 
 14
 The right to take over the defense was a provision for the benefit of Lloyds. It was not inserted for its insured's benefit, and surely not for the benefit of the Kienles. Lloyds, for its own benefit, had no reason to undertake the defense of the action as it was initially filed, because the claim thus stated was not within the coverage of the policy however liberally construed. When Pacific Farwest sent the original suit papers to Lloyds, it was not making a demand upon Lloyds to defend, because Lloyds had no such obligation. The insured was cooperating as it was required to do in accordance with the terms of the policy. Lloyds' denial of coverage and its election not to take over the defense were not breaches of any duty owed to its insured.
 
 
 15
 Lloyds' interest was first stirred when the Kienles' lawyer sent the amended complaint to Lloyds. The amended pleading arguably stated a claim within the risk which Lloyds had agreed to indemnify. Lloyds thereafter never expressly denied coverage until the present action was filed. Instead, Lloyds promptly wrote to Pacific Farwest's lawyer requesting that he forward the suit papers and escrow documents. Lloyds received no response to that request or to any other communication thereafter addressed to the insured or its counsel attempting to obtain information from the insured. There was no showing that Pacific Farwest's total disregard of its obligations after it first sent the suit papers was caused by reliance on any conduct of Lloyds which was susceptible of the construction that Lloyds denied coverage of the claim appearing in the amendment complaint. There is on these facts no predicate for foreclosing Lloyds from raising Pacific Farwest's breach of the cooperation clause as a bar to its liability on the policy.
 
 
 16
 All of the foregoing makes it apparent, we think, that we cannot hold that the critical determinations made in the District Court were clearly erroneous.
 
 
 17
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 *
 Hon. Stanley A. Weigel, United States District Court, San Francisco, California, sitting by designation