653 F.2d 1248
 Francis CRAWFORD, Jr., Aeromarine, Inc., a Hawaii
Corporation, C. A. McCluney Co., Inc., dba James
F. Pierce Flight School, a Hawaii
Corporation, Plaintiffs- Appellants,
v.
RANGER INSURANCE COMPANY, a New York Corporation, Defendant-Appellee.
 No. 80-4006.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 11, 1981.
Decided Aug. 17. 1981.
 
 1
 Joseph Schneider, Conklin & Schneider, Honolulu, Hawaii, for plaintiffs-appellants.
 
 
 2
 Thomas E. Cook, Honolulu, Hawaii (argued), for defendant-appellee; George W. Brandt, Honolulu, Hawaii, on brief.
 
 
 3
 Appeal from the United States District Court for the District of Hawaii.
 
 
 4
 Before MERRILL and FARRIS, Circuit Judges, and RICHEY,* District Judge.
 
 MARY ANNE RICHEY, District Judge:
 
 5
 This declaratory judgment action raises the issue of whether an insurance policy covers the death of a pilot killed in an airplane crash. The district court held that the policy does not cover the pilot's death. We affirm.FACTS
 
 
 6
 Crawford was the owner of an airplane which he leased to C. A. McCluney Co., Inc., dba James F. Pierce Flight School (McCluney). McCluney rented this airplane to pilots and also used it to give flying lessons. Aeromarine, Inc. (Aeromarine) performed maintenance on the aircraft.
 
 
 7
 The Ranger Insurance Company (Ranger) issued a liability insurance policy covering Crawford's airplane from January 23, 1976 to January 23, 1977. Crawford was the named insured and coverage was extended to McCluney and Aeromarine by an endorsement. On August 11, 1976 Mr. Lang (pilot), his wife, and two children rented the airplane from McCluney. The plane crashed while Lang was flying it killing Lang and one of his children, and injuring his wife and the other child.
 
 
 8
 Lang's wife and estate subsequently filed suit in Hawaii state court against appellants. Appellants were then informed by Ranger that they would be provided with a defense in accordance with the terms of the policy. They were further informed that the policy did not cover the claims for the pilot's death due to an exclusion in the policy. Appellants were further advised that they could hire their own counsel to cover the claims for the pilot's death if they desired.
 
 
 9
 Responding to Ranger's position that the policy did not cover Lang's death, appellants filed a declaratory judgment action in the district court seeking a declaration that the policy covered the death of the pilot. The district court ruled that it did not and appellants filed this appeal.
 
 DISCUSSION
 1. Ambiguity
 
 10
 Appellants argue that the insurance policy, taken as a whole, is ambiguous. In assessing this argument, this court must apply Hawaiian law. Under Hawaiian law, insurance policies must be construed as liberally as possible in favor of the insured and all ambiguities are to be resolved against the insurer. See Masaki v. Columbia Casualty Co., 48 Hawaii 136, 395 P.2d 927, 929 (1964). The court must however, respect the plain terms of the policy and not create an ambiguity where none exists. See AVEMCO Insurance Co. v. Chung, 388 F.Supp. 142, 147 (D.Hawaii 1975). Mere complexity in an insurance policy does not make it ambiguous. See State Farm Mutual Automobile Insurance Co. v. Bailey, 58 Hawaii 284, 568 P.2d 1185, 1188 (1977). The State Farm court stated that the policy should not be so complex that it would "mislead a reasonably literate person who takes the trouble to read it with respect to the coverage (provided in the policy)." Id.
 
 
 11
 Judged against these principles, the insurance policy in this case is not ambiguous with respect to the exclusion of coverage for the pilot's death. The first clause of the policy informs the insured that the policy's coverage is subject to limits and exclusions in the policy.[1] Thus, although the insuring agreement section of the policy obligated Ranger to pay for death or injury to any person,[2] the introductory clause puts the insured on notice that this coverage may be narrowed by other policy terms. One of the limitations on coverage is the pilot exclusionary clause.[3] This clause, in plain and simple language, advises the insured that deaths of pilots are not covered by the policy. Despite appellants' contentions to the contrary, the exclusionary clause is not "buried" inconspicuously in the policy. Rather, the heading and body of the exclusions section are the same type size and intensity as the other sections of the policy.
 
 
 12
 Appellants further argue, however, that the declarations section of the policy is inconsistent with the exclusions section thereby making the exclusions section ambiguous. This argument is meritless. Item 6(c) of the declarations section provides that a permissible use of the airplane is rental to pilots.[4] The overwhelming weight of authority is that there is no inconsistency between a declaration that rental to pilots is a permissible use and a pilot exclusionary clause. See Levra v. National Union Fire Insurance Co., 99 Idaho 871, 590 P.2d 1017 (1979); Ranger Insurance Co. v. Silverthorn, 553 S.W.2d 530 (Mo.App.1977); Saliba v. American Policy Holders Insurance Co., 157 N.J.Super. 476, 385 A.2d 239 (1978) (per curiam); Melton v. Ranger Insurance Co., 515 S.W.2d 371 (Tex.Civ.App.1974); Buestad v. Ranger Insurance Co., 15 Wash.App. 754, 551 P.2d 1033 (1976); contra Martin v. Ohio Casualty Insurance Co., 9 Mich.App. 598, 157 N.W.2d 827 (1968). These cases reason that the declarations provision is a condition precedent to policy coverage. Thus, if the aircraft were used in a manner contrary to the declarations section, the insurer would have no liability under the policy. The declarations section does not, however, purport to expand policy coverage to persons not covered in other sections of the policy. Therefore, there is no inconsistency between it and the exclusions section.
 
 
 13
 In sum, the insurance policy in this case is not one which would mislead a reasonably literate person who took the trouble to read it. The district court correctly determined that the policy is not ambiguous.
 
 2. Reasonable Expectations
 
 14
 Appellants, citing Gray v. Zurich Insurance Co., 65 Cal.2d 263, 419 P.2d 168, 54 Cal.Rptr. 104 (1966) (en banc), argue that the policy must be construed to cover the death of the pilot because this interpretation is in accord with their reasonable expectation that the policy provided this coverage. The reasonable expectations principle is a rule of construction to be applied when policy provisions which would deny coverage are unclear or inconspicuous. As noted above this policy is not ambiguous nor is the exclusionary clause inconspicuously placed in the policy. Therefore, the reasonable expectations principle is inapposite. See F. S. Smithers & Co. v. Federal Insurance Co., 631 F.2d 1364, 1367 (9th Cir. 1980) (distinguishing Gray as involving an ambiguous policy).
 
 3. Collateral Estoppel
 
 15
 Appellants next contend that the district court erred by failing to give the court's decision in Mathews v. Ranger Insurance Co., 281 So.2d 345 (Fla., 1973) collateral estoppel effect on the issue of whether the insurance policy covers the death of the pilot. In Mathews, the court held that an insurance policy quite similar to the one in this case did cover the death of a student pilot.
 
 
 16
 Herein, appellants seek to use collateral estoppel offensively.[5] In Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Court stated that trial courts have broad discretion to determine whether to apply collateral estoppel offensively. Id. at 331, 99 S.Ct. at 651. The Court noted that it should not be applied when it would be unfair to the defendant. Id. One of the unfairness factors mentioned by the Court was the existence of prior decisions which are inconsistent with the decision plaintiff seeks to use as a bar. Id. at 332, 99 S.Ct. at 652.
 
 
 17
 In the instant case, there is a decision which is inconsistent with Mathews on the issue of whether the insurance policy covers a pilot's death. See Ranger Insurance Co. v. Nichols, No. 98734 (Super.Ct.Riverside County 1974). The fact that Nichols was decided four months after Mathews and is not, therefore, a prior inconsistent decision is insignificant. In State Farm Fire & Casualty Co. v. Century Home Components, Inc., 275 Or. 97, 550 P.2d 1185 (1976), the court explained why it is unfair to give a decision collateral estoppel effect when there are prior inconsistent decisions:
 
 
 18
 "Giving a prior determination of an issue conclusive effect in subsequent litigation is justified not merely as avoiding further costs of litigation but also by underlying confidence that the result reached is substantially correct. Where a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, that confidence is generally unwarranted. The inference, rather, is that the outcomes may have been based on equally reasonable resolutions of doubt as to the probative strength of the evidence or the appropriate application of a legal rule of evidence."
 
 
 19
 550 P.2d at 1192 (quoting Restatement (Second) of Judgments § 88(4), comment f. (Tent.Draft No. 2, 1975)). This rationale is equally applicable to situations where there are inconsistent decisions decided after the case plaintiff seeks to use as a bar. Therefore, the district court did not abuse its discretion in not giving the Mathews decision collateral estoppel effect.[6]
 
 4. Waiver
 
 20
 Finally, appellants argue that Ranger waived its right to rely on the pilot exclusionary clause because it provided appellants a defense in the state court action without first securing their consent in a reservation of rights agreement.
 
 
 21
 A reservation of rights agreement is a notice by the insurer to the insured that the insurer will defend the insured but that the insurer is not waiving any defenses e. g., lack of coverage it may have under the policy. Generally, an insurer who defends an insured waives its rights to assert policy defenses unless it first notifies the insured that it is disclaiming liability under the policy. See 7C J. Appleman, Insurance Law & Practice § 4694 at 336 (Bendal ed. 1979).
 
 
 22
 In this case Ranger did send appellants a notice that it would provide them with a defense but that it was disclaiming liability for the pilot's death. Appellants contend, however, that this notice was insufficient to reserve Ranger's rights to assert policy defenses because appellants never consented to this reservation of rights.[7] The issue is, therefore, whether an insured's consent is necessary for a reservation of rights notice to be effective.
 
 
 23
 The only Hawaiian[8] case on this issue is Yuen v. London Guarantee & Accident Co., 40 Hawaii 213 (1953). In Yuen, the insurance company attempted to reserve its rights by orally notifying the insured just prior to trial that it did not consider itself liable under the policy. The insurer knew of the facts which formed the grounds for its disclaimer of liability well in advance of the trial date. The trial court found that the insured's disclaimer of liability was sufficient to reserve its rights to assert defenses under the policy even though the insured refused to agree to a reservation of rights. The trial court based its ruling on three cases which held that an insurer can preserve its rights merely by tendering a notice of disclaimer of liability to the insured. In reversing the trial court, the Hawaiian Supreme Court stated that the cases relied on by the trial court did not state the appropriate rule given the facts in Yuen. Rather, the court stated that on the facts before it the preferable view was that the insurer was required to obtain the insured's unqualified consent to a reservation of rights if the insurer was to defend the action while disclaiming liability. The court reasoned that on these facts it would be inconsistent for the insurer both to defend the action and disclaim liability.
 
 
 24
 The present case is factually distinguishable from Yuen. In the instant case, the state court lawsuit involves claims covered by the policy death and injuries to passengers as well as the non-covered claim for the pilot's death. Ranger had a duty, therefore, to defend this action despite the fact that one of the claims was not covered by the policy. See Babcock & Wilcox Co. v. Parsons Corp., 430 F.2d 531, 537 (8th Cir. 1970); Bellefonte Insurance Co. v. Wayson, 489 F.Supp. 58, 60 (D.Alaska 1980); California Union Insurance Co. v. Acquarius, 113 Cal.App.3d 243, 169 Cal.Rptr. 685 (1980). Thus, unlike the facts in Yuen, there was no inconsistency in Ranger providing a defense and disclaiming coverage for the pilot's death. Also unlike the insurer in Yuen, Ranger's conduct in this case was reasonable and not likely to prejudice appellants. Ranger quickly notified appellants that it was disclaiming coverage for the pilot's death and advised them that they could obtain additional counsel.
 
 
 25
 In sum, a close reading of Yuen shows that the court limited its holding to the egregious facts before it. As discussed above, Ranger's conduct in this case was significantly different from the conduct of the insurer in Yuen. Therefore, the district court correctly held that Ranger had not waived its right to assert the pilot exclusion.
 
 
 26
 Judgment affirmed.
 
 
 
 *
 The Honorable Mary Anne Richey, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 This clause provides:
 A capital stock insurance Company incorporated under the laws of the State of New York, herein called Company, agrees with the Insured named in the Declarations made a part thereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this Policy:
 
 
 [2]
 The relevant coverage is Coverage D. This coverage provides:
 INSURING AGREEMENTS
 Coverage D Single Limit Bodily Injury (including or excluding passengers) and Property Damage Liability. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, excluding passengers as defined therein, unless the Declarations describe Coverage D as 'Including Passengers', and for damages because of injury or destruction of property, including the loss of use thereof, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.
 Crawford chose coverage including passengers.
 
 
 [3]
 This clause provides:
 EXCLUSIONS
 This Policy does not apply :
 
 
 [9]
 under Coverages A, B, C and D to bodily injury, sickness, disease or death of any person who is a Named Insured or a pilot or crew member. (Emphasis in original)
 
 
 [4]
 This clause provides:
 PURPOSE(S) OF USE: The aircraft will be used only for the purposes indicated by the 'X':
 
 
 [6]
 XX(c) 'Limited Commercial'. The term 'Limited Commercial' is defined as including ... Student Instruction and Rental to pilots
 
 
 [5]
 Collateral estoppel is used offensively when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has unsuccessfully litigated in a previous action. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.4, 99 S.Ct. 645, 649 n.4, 58 L.Ed.2d 552 (1979)
 
 
 [6]
 Due to our disposition of this issue, we need not address Ranger's argument that Mathews and the instant case do not involve identical issues or the contention that Hawaiian law does not permit collateral estoppel to be used offensively absent mutuality of the parties
 
 
 [7]
 In its brief Ranger argues that appellants never objected to the counsel furnished by Ranger and never offered to take over defense of the state lawsuit. Ranger contends, therefore, that appellants have impliedly assented to Ranger's reservation of rights. See Ohio Casualty Insurance Co. v. Rynearson, 507 F.2d 573 (7th Cir. 1974). We decline to consider this argument as it was not raised before the district court
 
 
 [8]
 There is a split in authority in other jurisdictions on the issue of whether the insured's consent is necessary for an effective reservation of rights. See J. Appleman, supra § 4694 at 357