795 F.2d 1450
 Glenn K. OKADA, William E. Takabayashi, and Richard A.
Cooke, Jr., Plaintiffs-Appellees,
v.
MGIC INDEMNITY CORP., also known as Ambac Indemnity Corp.
and Wmbic Indemnity Corp., Defendant-Appellant.
 No. 85-2501.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 25, 1986.
Decided July 31, 1986.
 
 John S. Edmunds, Honolulu, Hawaii, for plaintiffs-appellees.
 Wallace A. Christensen, Washington, D.C., for defendant-appellant.
 Appeal from the United States District Court for the District of Hawaii.
 Before FERGUSON, CANBY, and HALL, Circuit Judges.
 FERGUSON, Circuit Judge:
 
 
 1
 Defendant MGIC Indemnity Corporation ("MGIC") appeals the district court's grant of summary judgment in favor of plaintiffs Glenn K. Okada, William E. Takabayashi, and Richard A. Cooke, Jr. ("insureds"), who were insured under a Directors and Officers Errors and Omissions policy issued by MGIC. The district court ruled that MGIC had a duty to defend the insureds in lawsuits alleging losses caused by the insureds as directors of a savings and loan association ("the underlying lawsuits"); that more than one potentially covered "loss" was involved; and that MGIC acted in bad faith by refusing to pay, without condition, the insureds' defense costs in the underlying lawsuits, refusing to affirm or deny coverage of claims in the underlying lawsuits, and refusing to enter settlement negotiations in the underlying lawsuits. Okada v. MGIC Indemnity Corp., 608 F.Supp. 383 (D.Hawaii 1985).
 
 
 2
 We affirm the rulings finding a duty to defend and more than one potentially covered "loss," but reverse the ruling that MGIC acted in bad faith.
 
 I.
 
 3
 Plaintiff insureds were three of the eight directors of First Savings & Loan Association of Hawaii ("First Savings"). MGIC issued a Directors and Officers Errors and Omissions insurance policy, the relevant terms of which are:
 
 
 4
 [T]he insurer agrees:
 
 
 5
 (a) With the Directors and Officers of the Association that if, during the policy period, any claim or claims are made against the Directors and Officers, individually or collectively, for a Wrongful Act, the Insurer will pay, in accordance with the terms of this policy, on behalf of the Directors and Officers or any of them, their heirs, legal representatives or assigns all Loss which the Directors and Officers or any of them shall become legally obligated to pay.
 
 
 6
 ....
 
 1. DEFINITIONS
 
 7
 ....
 
 
 8
 (d) The term "Loss" shall mean any amount which the Directors and Officers are legally obligated to pay or for which the Association is required to indemnify the Directors or Officers, or for which the Association has, to the extent permitted by law, indemnified the Directors and Officers for a claim or claims made against the Directors and Officers, for Wrongful Acts and shall include but not be limited to damages judgments, settlements, costs (exclusive of salaries of officers or employees), and defense of legal actions, claims or proceedings and appeals therefrom and cost of attachment or similar bonds; provided however, such Loss shall not include fines or penalties imposed by law or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.
 
 
 9
 ....
 
 4. LIMITS OF LIABILITY
 
 10
 ....
 
 
 11
 (d) Claims based on or arising out of the same act, interrelated acts, or one or more series of similar acts, of one or more of the Directors or Officers shall be considered a single Loss and the Insurer's liability shall be limited to the limit of liability stated in Clause 4(b) and 4(c). In the event that more than one Director or Officer is included in the same Loss, it shall be expressly understood that the total amount of such Loss, for the purpose of determining the aggregate limit for each such involved Director or Officer, shall be apportioned pro rata among each such involved Director or Officer unless otherwise mutually agreed upon by the Director or Officer and the Insurer.
 
 5. COSTS, CHARGES AND EXPENSES
 
 12
 (a) No costs, charges and expenses shall be incurred or settlements made without the Insurer's consent which consent shall not be unreasonable withheld; however, in the event such consent is given, the Insurer shall pay, subject to the provisions of Clause 4, such costs, settlements, charges and expenses.
 
 
 13
 ....
 
 
 14
 (c) The Insurer may at its option and upon request, advance on behalf of the Directors or Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to disposition of such claims, provided always that in the event it is finally established the Insurer has no liability hereunder, such Directors and Officers agree to repay to the Insurer, upon demand, all monies advanced by virtue of this provision.
 
 
 15
 The policy covered each loss for up to $1 million each year for each director, with an aggregate annual limit for each director.
 
 
 16
 In 1980, First Savings became insolvent and the Federal Savings and Loan Insurance Corp. ("FSLIC") took it over. In 1982, First Hawaiian Bank and FSLIC, as assignees of various shareholders' direct and derivative claims, filed the underlying lawsuits in federal district court against all eight directors of First Savings. See FSLIC v. Alexander, 590 F.Supp. 834 (D.Hawaii 1984). Each director hired defense counsel in the underlying lawsuits and sought payment from MGIC for the fees incurred. MGIC agreed to pay the costs as they came due, but reserved its rights to contest coverage and to demand reimbursement if the policy did not cover the claims involved.
 
 
 17
 All eight directors accepted payments with MGIC's reservation of rights for nearly two years. After that time three of them, the insureds here, refused to accept payment with the attached reservation of rights. MGIC therefore stopped paying the defense costs of the three directors, who then filed this action in federal district court seeking a declaratory judgment that MGIC had a duty to defend the underlying lawsuits without condition. The defense costs in the underlying lawsuits exceeded $1 million at the time of the district court decision.
 
 
 18
 The district court granted the insureds' motion for summary judgment. It ruled, first, that the policy was ambiguous because clause 5(c) conflicted with clause 1(d) and that the policy should be read against MGIC as the drafter of the adhesion contract. The court concluded that MGIC had a duty to pay the insureds' defense costs in the underlying action as they came due.
 
 
 19
 Second, the district court ruled that the underlying lawsuits involved separate alleged acts, each of which was a potential "loss" and could have given rise to a distinct claim. Therefore, even though the acts culminated in one result, First Savings' financial collapse, multiple potentially covered "losses" were involved. Because of the policy limits, MGIC could be liable for "multiple millions" in the underlying lawsuits.
 
 
 20
 Finally, the district court found that MGIC acted in bad faith because it "has refused to affirm or deny coverage, tender defense costs when due, or enter into settlement negotiations." MGIC timely appealed.
 
 II.
 
 21
 The district court had diversity jurisdiction over this case.[1] "A federal court applies the choice of law rules of the state in which it sits ... to determine the substantive law to apply in a diversity action." Lettieri v. Equitable Life Assurance Society of the United States, 627 F.2d 930, 932 (9th Cir.1980) (citing Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). Hawaii courts apply Hawaii state law when the acts covered by the policy occur in Hawaii, the insureds are Hawaii citizens, and the insurance company is not a Hawaii citizen. See, e.g., Crawfor v. Ranger Insurance Co., 653 F.2d 1248, 1250 (9th Cir.1981); State Farm Mutual Automobile Insurance Co. v. Bailey, 58 Hawaii 284, 568 P.2d 1185 (1977). Thus, Hawaii law governs this case.
 
 
 22
 We review de novo grants of summary judgment, First Insurance Co. of Hawaii, Inc. v. Hawaii, 66 Hawaii 413, 416, 665 P.2d 648, 651 (1983), and contract interpretations, Hanagami v. China Airlines, Ltd., 688 P.2d 1139, 1144 (Hawaii 1984).
 
 III.
 
 23
 Clause 5 of the insurance policy, read as a whole and subject to the reasonable expectations of the policyholder, establishes this policy as a duty to defend policy. Under clause 5(a), although the insurer does not have a duty to pay frivolous or unreasonable costs, it is required to pay those reasonable costs requested by the insureds. This clause establishes a duty to pay defense costs as they come due, with the insurer reserving the right not to pay unreasonable costs.
 
 
 24
 Clause 5(c) buttresses this interpretation of clause 5(a). Since clause 1(d) defines a "Loss" as defense costs, and requires the Insurer to pay for covered claims, clause 5(c) can refer only to potentially covered claims for which costs may be reimbursed if the claims are not covered. Thus, clause 5(c) is merely a reservation of rights clause that attempts to contract out of the general rule that insurers have a duty to defend potentially covered claims. See First Insurance Co. of Hawaii v. Hawaii, 66 Hawaii 413, 665 P.2d 648 (1983) (parties may alter common law rules of contract interpretation by use of clear and unambiguous language). Thus, clause 5(a) creates a duty to pay reasonable defense costs for uncontestedly covered claims, whereas 5(c) is an attempt to escape the duty to defend potentially covered claims, or claims whose coverage has not yet been established or conceded.
 
 
 25
 However, 5(c) is ambiguous because it does not specifically state which types of claims it is intended to cover, and thus it may confuse insureds. When an insurance policy is ambiguous, it is read in favor of the insured as a contract of adhesion. Hurtig v. Terminix Wood Treating & Contracting Co., 692 P.2d 1153 (Hawaii 1984). In addition, the ambiguity defeats the attempt to contract out of the duty to defend potentially covered claims. Therefore, this insurance policy establishes a duty to pay the defense costs as they come due for these potentially covered claims.
 
 
 26
 Under Hawaii law, " '[a]n insurer's duty to defend arises whenever there is a potential for indemnification liability of insurer to insured under the terms of the policy.' " First Insurance Co. of Hawaii v. Hawaii, 66 Hawaii 413, 417, 665 P.2d 648, 652 (1983) (quoting Standard Oil Co. of California v. Hawaiian Insurance & Guaranty Co., 65 Hawaii 521, 527, 654 P.2d 1345, 1349 (1982)). Thus, as a general rule, "where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage." Id. (citing Crawford v. Ranger Insurance Co., 653 F.2d 1248, 1253 (9th Cir.1981)); see also Crawford, 653 F.2d at 1250-51 (applying Hawaii law and finding, without relying on any express policy language providing for such a duty, a duty to defend a lawsuit involving covered and noncovered claims).
 
 
 27
 The duty to defend an insured is "separate and distinct from an insurer's obligation to pay a judgment entered against its insured." 66 Hawaii at 416, 665 P.2d at 651 (citing First Insurance Co. of Hawaii v. Continental Casualty Co., 466 F.2d 807, 811 (9th Cir.1972)). " 'The nature of the insurer's duty to defend is purely contractual and depends, in the first instance, on the language of the particular policy involved.' " Id. (quoting Ritter v. United States Fidelity & Guaranty Co., 573 F.2d 539, 542 (8th Cir.1978)). The duty to defend is broader than the duty to pay judgments. Id. at 417, 665 P.2d at 652.
 
 
 28
 The parties are free to modify by express agreement general contract principles that apply to policies, but any ambiguity will be read against the insurer, the drafter of an adhesion contract. Hurtig v. Terminix Wood Treating & Contracting Co., 692 P.2d 1153, 1154 (Hawaii 1984). "[P]olicies are to be construed in accord with the reasonable expectations of a layperson.... '[A]mbiguity is found to exist ... "only when the contract taken as a whole, is reasonably subject to differing interpretation." ' " Sturla, Inc. v. Fireman's Fund Insurance Co., 67 Hawaii 203, 209, 684 P.2d 960, 964 (1984) (quoting United States Fire Insurance Co. v. Colver, 600 P.2d 1, 3 (Alaska 1979)).
 
 
 29
 Thus, unless the MGIC policy expressly provides otherwise, MGIC has a duty to pay the insureds' defense costs as they come due and to enter settlement negotiations in the underlying lawsuits. MGIC argues that clause 5(c) expressly eliminates the duty to defend the potentially covered claims in the underlying lawsuits. Because clause 5(c) does not unambiguously state that MGIC does not have a duty to pay defense costs for potentially covered claims, MGIC must pay the defense costs as they come due.
 
 
 30
 Clause 1(d) defines a "loss" to be any amount that the directors were obligated to pay, including "defense of legal actions" in lawsuits involving claims potentially covered by the policy. The court found that, even if some of the claims in the underlying lawsuits turned out not to be covered, the insurance companies were liable for the defense costs. This finding is consistent with First Insurance Co., 66 Hawaii at 420, 665 P.2d at 653 (" 'The duty to defend is determined at the time suit is brought and not at the conclusion of litigation.' ") (citation omitted).
 
 
 31
 Clause 5(c) states that MGIC is entitled to reimbursement for the fees for those claims that turned out not to be covered. The two clauses conflict because clause 1(d) contemplates unconditional payment of defense costs for potentially covered claims, while clause 5(c) suggests that if the claims are not covered, the money MGIC advanced must be returned. The resulting ambiguity--whether the policy requires payment of defense costs for claims that are determined not to be covered by the policy--must be read against MGIC.[2]
 
 
 32
 Clause 5(a) establishes the policy as a duty-to-defend policy, and the district court correctly found that clause 5(c) was ambiguous in its attempt to contract out of paying defense costs of potentially covered claims as they came due.
 
 IV.
 
 33
 MGIC argues that the district court finding of more than one potentially covered "loss" was premature, and that the evidence does not support the court's finding of more than one potential loss. The finding was not premature, however, because MGIC had paid more than $1 million. Because the policy limits are $1 million for each "loss," the court had to consider whether MGIC needed to pay any more defense costs. If more than one loss was involved, MGIC would continue to be responsible for the defense costs. The facts on which the district court based its finding are undisputed and, if true, establish that the district court was correct.
 
 
 34
 MGIC concedes that more than $1 million has been expended for defense costs in the underlying lawsuits, but argues that this amount is irrelevant because these defense costs are not a "loss" under clause 1(d), but rather an optional payment under clause 5(c). Therefore, MGIC argues, no "loss" has been paid; the first $1 million has not been expended, and it is unnecessary at this stage to determine whether another $1 million or more is available.[3] MGIC's argument rests primarily on its related argument that it had no duty to defend the underlying lawsuits. MGIC concedes that if it had a duty to defend then the defense costs would come out of the $1 million increments. Therefore, its prematurity argument collapses because we find that it had a duty to defend.
 
 
 35
 The district court found that the underlying lawsuits alleged several distinct acts potentially covered by the MGIC policy.[4] The district court reasoned that more than one "loss" can culminate in one overall result, First Savings & Loan's failure, but one result does not require finding only one "loss." Finally, the court reasoned that the parties contemplated more than one loss because the directors chose a $1 million "per loss" policy rather than one with a $1 million ceiling.[5] Thus, the district court finding was timely and correct.
 
 V.
 
 36
 The district court improperly granted summary judgment on the issue of MGIC's bad faith. Summary judgment is appropriate only when " 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " First Insurance Co. of Hawaii v. Hawaii, 66 Hawaii 413, 416, 665 P.2d 648, 651 (Hawaii 1983) (citations omitted). None of the grounds on which the district court based its findings of bad faith--refusal to pay defense costs without reserving its rights, refusal to affirm or deny coverage, and failure to enter settlement negotiations--could have been resolved on summary judgment. MGIC argues that disputed material facts remain. We agree.
 
 
 37
 Moreover, it is unclear whether Hawaii would recognize a duty of good faith and fair dealing for insurance contracts, or bad faith for a breach of such a duty. Neither party cites Hawaii cases, the district court cites a California case for this proposition, and no Hawaii case appears to discuss this issue directly. We need not decide whether Hawaii would adopt this rule, however, because the district court improperly resolved the bad faith issues on summary judgment.
 
 
 38
 The court erred in finding that MGIC acted in bad faith by advancing defense costs with a reservation of its rights to contest coverage and demand reimbursement. We agree with MGIC that it was reasonable to reserve its rights because coverage liability had not been resolved. See First Insurance Co., 66 Hawaii at 422, 665 P.2d at 654 (discussing reservation of rights without discussing bad faith). We also agree with MGIC that its advancement of defense costs of more than $1 million in the underlying lawsuits raises a material factual dispute as to its good faith.
 
 
 39
 The district court also erred in finding bad faith in MGIC's refusal to affirm or deny coverage. This conduct was consistent with its reservation of rights to contest coverage. In addition, whether it refused to address the possibility of coverage is a disputed material fact.
 
 
 40
 Finally, the district court erred in finding that MGIC acted in bad faith by refusing to enter settlement negotiations on behalf of the insureds in the underlying lawsuits. The court cites AC and S, Inc. v. Aetna Casualty & Surety Co., 666 F.2d 819 (3d Cir.1981), in support of its finding. That case holds that an insurance company has a duty to settle in good faith. MGIC does not contest this general rule. However, the record does not support the finding in this case because of material factual disputes; the breach of a duty to settle in good faith depends on the reasonableness of the insurer's conduct. MGIC contests the finding that it refused to enter settlement negotiations. MGIC argues that it did participate in settlement talks; that it asserted its right to participate in settlement negotiations, but that the defendants in the underlying action refused to allow MGIC to participate. The insureds concede that MGIC "insisted on its right to be present at settlement discussions."
 
 
 41
 Thus, because of the uncertainty as to whether Hawaii would adopt the insurance "bad faith" developments of other jurisdictions, and because the district court erred in resolving the issue on summary judgment when material facts were disputed, we reverse the finding of bad faith.VI.
 
 
 42
 We affirm the grant of summary judgment in favor of the insureds on the first two rulings: that the policy was a "duty to defend" policy, and that the underlying lawsuits involved more than one potentially covered "loss." Because disputes of material fact remain, however, and because it is unclear whether Hawaii recognizes the duty of good faith and fair dealing in insurance contracts, we reverse the summary judgment on the ruling that MGIC acted in bad faith.
 
 
 43
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 44
 CYNTHIA HOLCOMB HALL, Circuit Judge, dissenting in part and concurring in part.
 
 
 45
 I dissent from the majority's interpretation of Hawaii law and the MGIC Directors and Officers Errors and Omissions Insurance Policy (the policy). The policy provides MGIC the option to advance litigation expenses as they come due, and the right to associate itself with the defense. The parties knew about these provisions when they signed the policy. Yet the majority takes statements regarding the scope of the insurer's duty to defend under Hawaii law out of context to conclude that Hawaii implies a duty to defend in all insurance contracts unless expressly negated, and ignores the plain, unambiguous language of the policy.
 
 
 46
 * Contrary to the majority's analysis, Hawaii does not imply a duty to defend in all insurance contracts unless the policy expressly provides otherwise. The question of whether an insurer has a duty to defend in a particular case has two separate components: (1) whether there is a duty to defend imposed by the policy, see, e.g., First Insurance Co. v. Hawaii, 66 Hawaii 413, 665 P.2d 648, 651-52 (1983); Ritter v. United States Fidelity & Guaranty Co., 573 F.2d 539, 542 (8th Cir.1978); and (2) whether any of the accusations against the insured are within the scope of the duty to defend, see, e.g., Standard Oil Co. v. Hawaiian Insurance & Guaranty Co., 65 Hawaii 521, 654 P.2d 1345, 1349 (1982); Gray v. Zurich Insurance Co., 65 Cal.2d 263, 419 P.2d 168, 176, 54 Cal.Rptr. 104 (1966). The Hawaii courts have continuously emphasized that " 'the insurer's duty to defend is purely contractual and depends, in the first instance, on the language of the particular policy involved.' " First Insurance v. Hawaii, 665 P.2d at 651 (quoting Ritter, 573 F.2d at 542) (emphasis added). See also Hawaiian Insurance & Guaranty Co. v. Chief Clerk, --- Hawaii ---, 713 P.2d 427, 430 (1986); Hawaiian Insurance & Guaranty Co. v. Brooks, --- Hawaii ---, 686 P.2d 23, 26 (1984). The Hawaii courts have not qualified this statement with a rule that a duty to defend is implied unless expressly negated. If the policy does not impose a duty to defend upon the insurer, then there is no duty to defend under Hawaii law.
 
 
 47
 The majority's reliance on Standard Oil, 654 P.2d 1345, and First Insurance v. Hawaii, 665 P.2d 648, is wholly misplaced. In Standard Oil Co. v. Hawaiian Insurance & Guaranty Co., 2 Hawaii App. 451, 634 P.2d 123, 128-29 (1981), the Hawaii Intermediate Court of Appeals addressed the question of whether the insurer received adequate notice from the insured that a complaint against the insured presented claims for which the insurer was required to defend and potentially indemnify. 634 P.2d at 128-29. The insurance policy at issue specifically provided that the "[insurer] shall have the right and duty to defend any suit against the insured...." Id. at 125. The court concluded that the complaints filed against the insured which the insured forwarded to the insurer provided the required notice. Id. at 129. In affirming the notification issue the Hawaii Supreme Court relied on the California Supreme Court's decision in Gray, 419 P.2d 168, for the proposition that "[a]n insurer's duty to defend arises whenever there is a potential for indemnification liability of insurer to insured under the terms of the policy." 654 P.2d at 1349. Because the policy imposed a duty to defend on the insurer whenever there was a potential for indemnification, the court concluded that the insurer had a duty to look behind the pleadings to determine if any potential for indemnification existed. Id. The court did not imply a duty to defend as a matter of Hawaii law as the majority suggests; the duty to defend was provided in the insurance policy.
 
 
 48
 First Insurance v. Hawaii, 665 P.2d 648, fails to support the majority's analysis for similar reasons. As in Standard Oil, the insurance policy in First Insurance v. Hawaii gave the insurer "the right and duty to defend any suit against the insured...." Id. at 653. The issue in First Insurance v. Hawaii, was whether the insurer's duty to defend was triggered by pleadings against the insured which stated covered and not covered claims. Id. at 652-54. Relying on Standard Oil and Gray,[1] the court held that the duty to defend imposed by the policy applied under such circumstances. Id. at 652. The court did not imply a duty to defend as a matter of Hawaii law.
 
 
 49
 The majority's strained construction of Crawford v. Ranger Insurance Co., 653 F.2d 1248, 1250-53 (9th Cir.1981) (applying Hawaii law), is even less persuasive. The insurance policy at issue in Crawford covered death and injuries from plane crashes, but excluded the pilot from its coverage. Id. at 1250-51. We held that the insurer did not waive its right to contest coverage by providing a defense under a reservation of rights. Id. at 1253. In ruling on the waiver issue we noted that the insurer had a duty to defend the entire suit because the allegations included claims that were covered and the claim for the pilot's death that was not covered. Id. Like First Insurance v. Hawaii and Standard Oil, this was a statement regarding the scope of the insurer's duty to defend. The majority's conclusion that we implied a duty to defend as a matter of Hawaii law in Crawford because the duty to defend language was not quoted in the opinion is pure conjecture. The existence of a duty to defend was not at issue, there was no need to quote the duty to defend provision of the policy in the opinion. Crawford contains no statement that a duty to defend is implied as a matter of Hawaii law when not expressly negated by the contract.
 
 
 50
 The majority's conclusion that Hawaii implies a duty to defend in all insurance policies unless expressly negated is the worst form of judicial activism by a federal court. If the Hawaii legislature[2] or the Hawaii courts wish to adopt the rule of construction which the majority has fashioned, then I will gladly apply it. However, I will not participate in the majority's decision to substitute its judgment for that of Hawaiian lawmakers.
 
 II
 
 51
 I also disagree with the majority's interpretation of the MGIC policy at issue in this case. The majority discerns an ambiguity in the standard insurance practice of stating a general definition in the policy and then limiting that definition through subsequent exclusions, when no other court or scholar reviewing the same or similar language has found an ambiguity.
 
 
 52
 The policy definition of loss in section 1(d) includes "judgments, settlements, costs ... and defense of legal actions, claims, or proceedings and appeals therefrom...." By defining litigation expenses as a loss they are subject to the exclusions set forth elsewhere in the policy the same as any other loss. The policy does not contemplate "unconditional payment of defense costs for potentially covered claims" as the majority suggests, it contemplates payment of defense costs as a loss if indemnification is required. See Continental Casualty Co. v. Board of Education, 302 Md. 516, 489 A.2d 536, 538-43 (1985).[3] Conspicuously absent from the MGIC policy is any clause providing that the insurer has the right and the duty to defend.[4]
 
 
 53
 Interpreted properly there is no conflict between section 1(d) of the policy and section 5(c), which gives MGIC the option to advance expenses upon request, and makes expenses advanced subject to repayment if MGIC is ultimately determined to have no liability. In Continental Casualty the Maryland Supreme Court interpreted loss and expense provisions substantively identical to those in the MGIC policy. See 489 A.2d at 538-39. The insured was held liable for certain claims within the policy's coverage and certain claims outside of the policy's coverage. Id. at 543. The insured sought recovery for those litigation expenses which it was entitled to recover under the insurance policy and for failure to defend the entire suit. Id. at 542-43. The court responded:
 
 
 54
 Provisions of the subject CNA policy relating to defense are substantially different from the duty to defend clause of a conventional liability policy. Assureds and/or the Board, not CNA, select and retain defense counsel. "Loss," whether incurred by way of judgment, settlement, or defense costs, is charged against the policy limit without distinguishing between damages and legal fees. CNA has the option, but not the obligation, to advance expenses. CNA's consent, which is not unreasonably to be withheld, is to be obtained before expenses are incurred or settlements made. If CNA advances expenses under the subject policy and "it is finally established the Insurer has no liability" under the policy, then each recipient of advances agrees to repay CNA all monies advanced on his or her behalf.
 
 
 55
 Id. at 543. See also Comment, supra note 4 at 711 (noting that director has no recourse under MGIC policy if insurer refuses to advance expenses as they come due, and relying on unpublished district court decision in Clandening v. MGIC Indemnity Corp., No. CV 83-2432 (C.D.Cal. May 24, 1983), reaching the same conclusion). Contrary to the majority's interpretation, this approach gives effect to all sections of the MGIC policy. Section 1(d) creates a right to payment for judgments and defense costs within the policy's coverage. Section 5(c) compliments section 1(d) by giving MGIC the option to advance litigation costs subject to repayment if liability is not established.
 
 
 56
 The majority's interpretation of section 1(d) also gives no meaning to section 6(d), which gives MGIC "the right to associate itself in the defense," and section 5(a), which gives MGIC the right to review costs, charges, expenses or settlements before they are incurred by the insured. The right to associate itself with the defense is a provision for the benefit of MGIC which negates any implication that the policy imposes a duty to defend. See Kienle v. Flack, 416 F.2d 693, 695-96 (9th Cir.1969); Healy Tibbitts Construction Co. v. Foremost Insurance Co., 482 F.Supp. 830, 837 (N.D.Cal.1979). The majority's implication of a duty to defend in the policy renders section 5(a) nonsensical by requiring MGIC to consult with itself before reaching settlements or incurring costs.
 
 
 57
 Rather than take a view of section 1(d) which renders three other sections of the policy meaningless, I find that MGIC has no duty to defend under the policy. I would reverse the district court's grant of summary judgment for plaintiffs on the duty to defend issue and grant summary judgment in favor of MGIC.
 
 III
 
 58
 Because of my resolution of the duty to defend issue I do not address plaintiffs' allegation that MGIC acted in bad faith in advancing defense costs under a reservation of rights, or plaintiffs' claim that multiple losses are involved. I concur in the majority's conclusion that there remain material issues of fact regarding MGIC's alleged bad faith in responding to plaintiffs settlement inquiries.
 
 
 
 [1]
 The plaintiffs were citizens of Hawaii, and the defendant was a New York corporation with its principal place of business in Wisconsin. Because the insureds alleged that they each accrued over 200 hours of defense counsel costs and that MGIC was liable for the costs, each fulfilled the $10,000 amount in controversy required for diversity jurisdiction. See 28 U.S.C. Sec. 1332
 
 
 [2]
 Of course, we do not decide whether MGIC will ultimately be able to obtain reimbursement of any of the money advanced to the insureds. That question is not before us; we decide only that MGIC must pay as the defense costs become due
 
 
 [3]
 The district court and both parties apparently agree that MGIC's duty to pay defense costs, if one exists, will end when the costs exceed the policy limits. It is unclear whether the agreement is based on the policy language that defense costs constitute a "loss" or on a general rule that the duty to defend lapses when the policy limits are exhausted
 
 
 [4]
 For example, "(1) voting at separate times to authorize spot loans to home buyers; (2) authorizing five separate, unrelated large condominium project loans; [and] (3) ordering the move and renovation of corporate headquarters without having sufficient funds therefor."
 
 
 [5]
 The insureds chose the more expensive option for limits of liability, which provided for $1 million each loss, with an aggregate limit each policy year for each director and officer. The other option would have provided $1 million each year, regardless of the number of suits or the number of Directors and Officers insured
 
 
 [1]
 Gray, like Standard Oil and First Insurance v. Hawaii which have relied on it, is a decision regarding the scope of the insurer's duty to defend. The insurance contract at issue imposed a duty to defend on the insurer, but the insurer argued that the complaint for intentional injuries was outside the scope of the policy. Id. 419 P.2d at 176. The California Supreme Court rejected the insurer's argument, holding that the insurer's duty was governed by the facts underlying the complaint, which stated a claim for intentional injury which was not covered and negligence which was covered, and concluding that the duty to defend arose with the potential for indemnification. Id. at 176-77
 
 
 [2]
 The California legislature has adopted a provision imposing a duty to defend on insurer's under certain types of insurance contracts unless the duty to defend is negated by the insurance contract. Cal.Civ.Code Sec. 2778; Gribaldo, Jacobs, Jones, & Associates v. Versicherunges, 3 Cal.3d 434, 476 P.2d 406, 414-15, 91 Cal.Rptr. 6 (1970)
 
 
 [3]
 See also Johnston, Corporate Indemnification and Liability Insurance for Directors and Officers, 33 Bus.Law. 1993, 2023 (1978) (interpreting loss provision of Lloyd's directors and officers liability policy on which the MGIC loss provision is patterned, and concluding that "[t]here is nothing in the policy which requires the insurer to pay [defense costs] until the insureds' liability has been determined"); Hinsey, The New Lloyd's Policy Form for Directors and Officers Liability Insurance-An Analysis, 33 Bus. Law. 1961, 1966 (1978) (concluding that defense costs are not reimbursed under loss provisions of Lloyd's policy if one of the policy exclusions applies)
 
 
 [4]
 See Knepper, Liability of Corporate Officers and Directors, Sec. 20.16 at 642 & Supp. (3d ed. 1978) ("The [directors and officers] policy forms do not require payment of legal expenses by the insurer until the legal liability of the insured has been established."); Comment, Practical Aspects of Directors' and Officers' Liability Insurance-Allocating and Advancing Legal Fees and the Duty to Defend, 32 UCLA L. Rev. 690, 691-92 (1985) (noting absence of duty to defend in directors and officers liability policies)